## F. M. CAMPBELL v. C. MACMANUS.

1—A homestead already acquired may be enlarged or increased to the maximum allowed by law, and the addition becomes part of the homestead and is exempt from execution ; and it was error to charge a jury to the contrary.

APPEAL from Cameron. Tried below before the Hon. E. Basse.

The opinion of the court states the facts.

*Powers & Maxan,* for the appellant.—The only point which seems to have been made and relied upon by the plaintiff below is, that many years ago Campbell acquired lot No. 4, adjacent to lot No. 3 in question, built his house upon it, lived there with his family, and that he thereby designated the lot No. 4 as his homestead in such a manner that he became confined exclusively to said lot, and could not at any time after increase the extent of the homestead by adding any more land to it, even if he did not exceed the constitutional limit of two

thousand dollars in value.  In other words, the plaintiff contends that whatever property, under two thousand dollars in value, has once been designated as a homestead, remains as the homestead, and that under no circumstance will the head of a family be entitled to increase the extent of the homestead ; that whatever property he first held as the homestead is permanently so, and should its value be only, for instance, five hundred dollars, he would be bound to let it remain as his homestead without addition, unless he should choose to remove to other land and commence anew with a more valuable homestead.

That this is a fair statement of plaintiff's position is shown by the charge which he asked of the court and which was given to the jury.   The second charge is as follows :

" A lot recently purchased does not *thereby* become a part of a homestead already designated and used as a homestead."

There is certainly such confusion in the expressions used as to have required the court to refuse the charge, but unfortunately it was given, and led to the verdict for the plaintiff.   The confusion arises from the laxity with which the word " thereby" is used.   With no desire to indulge in a verbal criticism in a case so full of merits for the defendant as the present one, we submit that the charge conveys no idea bearing any relation to the facts in the case, and for that reason should have been rejected by the court.   It was not claimed by defendant or any one else, that No. 3 was a part of the homestead, *because* it had been recently purchased, and such is the effect of the charge given at the request of the plaintiff.   It had nothing to do with the case, and being totally irrelevant and inapplicable the defendant points out the giving such instruction to the jury as one of the grounds of error on which he relies.

But to return.   Further to show that the intention of the plaintiff is as has been stated, we refer to the third charge asked for by him and granted by the court, as follows :   " It is not necessary that a homestead should be worth two thousand dollars in order to render it exempt ; the homestead may be worth

less than two thousand dollars and yet additional property be subject to forced sale."

If, by this instruction, the plaintiff intended anything else than that lot No. 4 being worth less than two thousand dollars was exempt, but that lot No. 3 being additional property, was subject to forced sale, we have failed to take his meaning.

The defendant insists that this charge also is framed with a looseness which should have excluded it. That the proposition, considered in the abstract, is sustainable in law, is quite possible, but when applied to the circumstances of the case it is totally out of place, and only calculated to mislead the jury. For there is manifestly a confusion in the terms of the charge. To be sure, " additional property," separate and independent from the homestead, would be liable to execution; but when that " additional property " is a part of the homestead and included within it, it ceases to be " additional property," in the sense intended by plaintiff, and as applied to lot No. 3, the term is entirely wrong, for the so-called " additional property " " lot No. 3," and " homestead " are all one and the same thing, in this case.

Now, on the other hand, defendant submits that the position of plaintiff, as stated, is untenable, and that a family may have commenced to acquire a homestead on property under the value of two thousand dollars; that in after time this homestead could be added to by extending the number of town or city lots, until the value limited by law was reached; and that, if such original and extended property together, at the time of the levy and sale, was used and occupied as a residence and home by the family, the same would be exempt from forced sale.

The constitution of the State provides expressly. that the homestead of a family consisting of any town or city lot or *lots*, in value not to exceed two thousand dollars, shall not be subject to forced sale. It is evident, therefore, that there is no limit to the number of lots, but only to their value.

Nor is there any provision binding the head of a family to the precise and identical lot or lots which he originally designated, without privilege to add thereto any other lot or lots he may choose to attach and include to the previous ones, so as to make them exempt.

The act of the Legislature of February 2, 1860, provides that the homestead in a town or city, exempt from forced sale, is hereby declared to be the lot or lots *occupied* or destined as a family residence, not to exceed two thousand dollars in value. This provision requires the lots to be *occupied* as a family residence to exempt it from forced sale. We ask, occupied when? Of course, at the time it is proposed to subject it to such forced sale. That is the time to which we must look to determine the question of homestead *vel non*. We can not go back beyond that time to inquire at what particular or successive stages the lots were acquired, or whether they were obtained on one or more occasions. It is sufficient if at the time of the proposed levy or sale the city lots, to any number, were *occupied* as a family residence, and did not exceed two thousand dollars in value. That would constitute the homestead. And so it was held by this court in the case of Stone v. Darnell, where this point expressly came up for settlement. " *The time of the sale* is the time to which we must look in ascertaining the fact whether the defendant did or did not have a homestead." (20 Tex., 14.)

If such is the rule, as it undoubtedly is, what possible relevancy could the charges of the court, given at the request of the plaintiff, have to this case? They could only mislead, and did mislead the jury, to look to the original designation of lot No. 4 as the homestead, and to leave out lot No. 3 in question, as being a part of it. And in that respect the charges referred to were erroneous.

Now, the defendant has also assigned as error the refusal of the court to give the eighth charge asked for by him. This charge is as follows: "A head of a family who has already acquired a homestead can add thereto subsequently by in-

creasing the number of city lots not .to exceed *in the whole* the amount of two thousand dollars."

There was no reason in law to refuse this instruction. To give an illustration of the meaning of this charge, as bearing on this case, we will suppose that many years ago lot No. 4 was designated as the homestead, the same being worth, with improvements, say one thousand dollars, and that an additional lot was added thereto, so that in the whole the amount of two thousand dollars in value was not exceeded—would not the whole be the homestead, and exempt from forced sale? This, is what the defendant contends is the correct rule of law, and contains the proper sense of the constitution and the law on the subject. To have denied the defendant such an instruction was error, by leaving unqualified the charges given for plaintiff, and by supporting the erroneous interpretation of the homestead law, as pretended by him.

In fact, this charge was asked by the defendant only to meet the theory of the plaintiff, and not because it had any real connection with the law and facts in this case. But if only to meet such a theory, to modify the charges given at plaintiff's request, the defendant was entitled to have had it go to the jury. The controlling point in the case was whether both of said lots constituted the homestead at the *time of sale*, without regard to any previous original designation of one lot and the addition of another.

*Frank E. Macmanus*, for the appellee.—The third and fourth errors assigned having reference exclusively to the question of homestead, put in issue by the defendant's plea, are that the court erred in charging that " a lot recently purchased does not, thereby, become a part of the homestead already designated and used as a homestead," and (4) that " it is not necessary that a homestead should be worth $2000 in order to render it exempt. The homestead may be worth less than $2000, and yet additional property be subject to forced sale." Homestead is merely a special designation of a particular kind of

property.   The thing existed before the law, and does not owe its existence to the law, which merely confers certain immunities on the class of property known and designated as the homestead.   The law does not require that a man shall have a homestead at all, much less that it shall have a certain value. The law fixes a limit up to which the value of the homestead, protected from forced sale, may extend, but nowhere prescribes that it shall attain a certain value.   That is left to the free choice of every man.   The wealthiest man in the State may, if he so wills, content himself with a homestead not worth over $500, and leave all his other property subject to the claims of his creditors.   The evidence in this case shows that the claim of homestead, set up by the defendant, is simply a fraudulent pretext to defeat and hinder the just claims of his creditors. According to the allegation of his answer, which is sustained by the testimony of his witnesses, the defendant had, for eighteen years previous to the bringing of this suit, his homestead on lot No. 4 in block No. 54, adjoining lot No. 3, the one in dispute.   No attempt has been made to disturb him in the free enjoyment of that homestead, which has been estimated by the witnesses at from $1500 to $2500.

The judgment on which the alias execution was issued was obtained on the 5th of June, 1867.   The defendant only became the owner of the lot in dispute on the 5th of July, 1868, while an execution was pending against him for a precedent debt. No attempt was made to enforce that execution against the homestead.   Nor would any attempt have been made to levy on the additional lot if the defendant had not already had, in the language of this court, " a homestead, where he resides ; the place where he lives ; the place where he usually sleeps and eats, where he surrounds himself with the ordinary insignia of home, and where he may enjoy its immunities and privacy." (Philleo v. Smalley, 23 Texas, 502.)   That he had had this homestead on lot No. 4 for eighteen years previous to the bringing of this suit, there is no question ; and it is equally certain that he now possesses precisely the same thing, undisturbed by

the sheriff or plaintiff in execution. It is not pretended that if lot No. 3 constituted a part of this homestead, it would be subject to sale even for a precedent debt, unless the defendant had a homestead at the time of the levy. (Darnell v. Stone, 20 Texas, 11.) But in the case cited, as well as in that of Cassiday v. Shepherd, 20 Texas, 24, this court say, that while the homestead, as provided by law, should be protected, "fraud will not be permitted."

The question involved in this case is not whether the home-stead is exempt, but whether a fraudulent pretext of homestead will be allowed to defeat the rights of an honest creditor, and protect from his execution an additional lot purchased (with the creditor's money) many years after the homestead had been acquired and designated. It was objected in the court below that fraud will not be presumed, but must be proved. This court, in the case of Burch v. Smith, 15 Tex., 223, say: "Fraud may be proved by circumstantial evidence. It is not in its nature discernible by the direct evidence of the senses; and is usually so covert and concealed, or is attended with such attempts at concealment, as to be incapable of proof otherwise than by circumstantial or presumptive evidence. Its existence in a given case may be proved either by intrinsic evidence of unfairness in the transaction itself, or by evidence of facts and circumstances attending it which by the ordinary tests by which we judge of the motives to action, appear inconsistent with an honest purpose. And where it is said that fraud can, not be presumed, it is not meant that the presumption of fraud, may not arise and be legitimately deduced by a jury from such, evidence, but only that it is not to be assumed of a transaction, that it is fraudulent in the absence of proof afforded by intrin-sic evidence of unfairness in the transaction itself, or extrinsic facts and circumstances leading to that conclusion. There is reason to apprehend that juries are not unfrequently misled in cases of this character, by being told that fraud can not be pre-sumed, but must be proved; thereby inducing the belief that fraud is a thing that has a material existence, is tangible, and

can not be otherwise proved than by evidence direct and positive. Such is not its nature. It is not a thing susceptible of ocular observation or physical demonstration. Yet its existence, in a given case, may be sufficiently demonstrated for judicial purposes, and to warrant judicial action, by intrinsic evidence of unfairness in the contract or transaction itself. Thus, though mere inequality in a bargain, or inadequacy of consideration, would not of itself, unattended with fraud, afford a distinct ground for annuling the contract; yet there may be (in the words of Judge Story) such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition, or some undue influence."

It is respectfully submitted that in the present case there was abundant "intrinsic evidence of unfairness in the transaction itself," in the fact that the defendant, in the face of an unsatisfied execution, purchased for the exact amount and kind of money due ($500 in gold) a town lot, to which the circumstance of its contiguity, together with his own previous trespasses thereon, alone conspired to give an appearance of constituting a part of his homestead for the last eighteen years! Does the conduct of the defendant, in the light of the "evidence of facts and circumstances attending it, by the ordinary tests by which we judge of the motives to action, appear consistent with an honest purpose? Neither courts of law nor equity insist upon positive and express proofs of fraud, but each deduces them from circumstances affording strong presumptions." (Brisco v. Bronaugh, 1 Tex., 340-1.)

The jury in this case, consisting of the immediate neighbors of the defendant, felt warranted in deducing conclusive proofs of a fraudulent intent from the intrinsic evidence of unfairness in the transaction disclosed in the testimony presented to them. "The *intent* was a question of fact, and peculiarly within the province of the jury. Of the weight of the evidence they are the judges." (Id.) The main issue presented to them was, is the lot in question a portion of the defendant's homestead?

Their verdict leaves no room for a doubt as to their conviction upon all the facts submitted to them:

" We, the jury, find that plaintiff is legally and justly entitled to lot No. 3 in block No. 54, situated on Elizabeth street, in the city of Brownsville, Texas, and that the above named lot is not a part of the homestead claimed by the defendant."

The alleged error of the court in the charges given, as well as in those refused, were fully argued on the ·application for a new trial, which was refused, and exhibit no point material to the issue that is not embraced in the charges given.  "If there is no error in the charge, in respect to any matter which was at all material, or which could in any manner have prejudiced the defendant's rights, as they are disclosed by the statement of facts, the judgment will not be reversed."  (Jones v. Thurmond, 5 Tex., 318.)

In view of the law and the facts, it is respectfully submitted that the judgment ought to be affirmed.

DENISON, J.—The facts of this case, as shown by the record, are substantially as follows:

Appellant, a married man, more than eighteen years before the commencement of this suit, purchased lot No. 4 in block No. 54, in the town of Brownsville, built a house thereon, and has occupied the same, with his family, as a homestead from that time up to the present; that for a long time before the commencement of this suit, he inclosed within the same fence the adjoining lot, No. 3.   These two lots, under one inclosure, were, for many years prior and up to the year 1868, occupied by appellant and his family as a homestead.   About the middle of the year 1866, appellant bought lot No. 3 of Franklin Cummings, the agent of the owner, for $500; and, as it took some time to procure a perfect title, he paid interest up to the time of the delivery to him of the deed, which was about the 5th of July, 1868.   On the 6th of October, 1868, lot No. 3 was sold by the sheriff of Cameron county, under an execution from the County Court of said county, issued upon a judgment

rendered in said court in favor of appellee against appellant. Appellee became the purchaser, and brought suit to the Spring term of the District Court to recover possession of said lot No. 3 from the appellant. Upon the trial of the cause verdict and judgment was rendered for appellee. Appellant appeals from said judgment to this court.

Of the instructions given to the jury at the request of plaintiff, and those refused to be given at the request of defendant, are the following, assigned as grounds of error, to wit: Charge No. 2, given at the request of plaintiff, and charges Nos. 2 and 8, requested by the defendant and refused. Charge No. 2, given by the court, is as follows:

"A lot recently purchased does not thereby become a part of a homestead already designated and used as a homestead."

Charges Nos. 2 and 8, asked by defendant and refused, are:

2. "If the jury believe from the evidence that the defendant, Campbell, has used and enjoyed, with his family, (he being a married man,) lot No. 3 in block No. 54, from the time that he became the owner thereof, in connection with lot No. 4, in said block, as grounds attached to his family residence, and that at the time of the levy and of the sale thereof by the sheriff under execution, he and his family so used and enjoyed the same, and that the said lots Nos. 3 and 4 in block No. 54, were not worth more than two thousand dollars, then the said lot No. 3 was, at the time of such levy and sale, the homestead of defendant and exempt from forced sale."

8. "A head of family who has already acquired a homestead, can add thereto subsequently by increasing the number of city lots, not to exceed in the whole the value of $2000," his acts and declarations showing his intentions.

The effect of the charge given at the request of plaintiff, taken together with the charges 2 and 8, refused, was virtually to instruct the jury that a homestead once acquired and occupied can not be increased or added to, even if the addition does not increase the value of the whole property to over $2000. This was manifest error. A homestead of less value than $2000

may be increased in value up to the limit of $2000 by the acquisition of adjoining lot or lots.

The judgment of the court below is reversed and the cause remanded. :

Reversed and remanded.