HEIDELBACH, FRIEDLANDER & CO. v. E. CARTER.

Decided February 20, 1904.

**1.—Homestead—Separate and Disconnected Tracts.**

Where the original homestead is enlarged by subsequently acquired tracts separated therefrom by intervening lands, such added lands must be used in some way in connection with the home place for the comfort, convenience or support of the family in order to impress upon them the homestead character.

**2.—Same—Use of Added Tracts.**

Where the owner of a rural homestead of 105 acres purchased other land one and one-half miles therefrom for the purpose of augmenting his homestead, and used such additional land for pasturing his cows and horses and cutting hay for them therefrom, he having no other pasture or meadow land, it became part of the homestead.

**3.—Same—Sale in Part.**

Such added land did not lose its homestead character by reason of a sale by the owner of the tract on which his residence was situated where he, prior to a levy thereon, bought fifty acres adjoining such added land and erected a dwelling house thereon as the home of himself and family and with the intention that these lands should continue to constitute his homestead.

**4.—Same.**

The fact that such homestead owner never actually occupied the latter tract of fifty acres with his family, but was forced to relinquish his purchase thereof because of his inability to pay for it, did not deprive the added land adjoining of its homestead character so as to subject it to sale under a levy made before the purchase of the fifty acres was so relinquished.

Appeal from the District Court of Lamar. Tried below before Hon. Ben H. Denton.

*Dudley & Sturgeon,* for appellants.

*Moore, Park & Birmingham,* for appellee.

TALBOT, ASSOCIATE JUSTICE.—Appellee Carter brought this suit to cancel and annul a sheriff's deed conveying to appellants two tracts of land, one 80 acres and the other 10 acres, situated about ten miles from the city of Paris, in Lamar County, Texas, alleging that said deed was a cloud upon his title. Appellee claimed title to said two tracts of land under J. A. Carter, and alleged that at the dates of the levy of the writ of attachment, judgment, sale and sheriff's deed, through which appellants claim title thereto, said J. A. Carter was the head of a family and said land constituted a part of his homestead.

Appellant answer by general denial, and filed a cross-action in trespass to try title and for rents. To this action appellee pleaded not guilty. The cause was tried by the court without the intervention of a jury and judgment rendered in favor of appellee, canceling said deed and quieting him in his title and possession to said land.

The court reduced his conclusions of law and fact to writing, and we adopt the conclusions of fact, as follows: "That on the 16th day of May, 1893, Heidelbach, Friedlander & Co., defendants herein, recovered a judgment in the District Court of Lamar County, Texas, against the

firm of Carter, Richie & Co., and against the individual members of said firm, of which John A. Carter was one, for the sum of $853.52, and foreclosing an attachment lien on the two tracts of land in controversy, which had, on the 17th day of March, 1893, been attached as the property of said John A. Carter, one of the defendants in said suit, and ordering the sale of the same as under execution; that an order of sale issued upon said judgment on the —— day of ——, 1893, and was on the —— day of ——, 1893, levied upon the two tracts of land in controversy, and in pursuance of such levy said land was, on the first Tuesday in August, 1893, sold at the courthouse door in Lamar County, by the sheriff of said county, and that said Heidelbach, Friedlander & Co., plaintiffs in execution, became the purchaser at such sale, and the sheriff thereupon made them a deed to said land; that the said John A. Carter was the owner of said land at the date of the levy of said writ of attachment thereon, and at the date of the sale thereof.

"I further find that said John A. Carter purchased the 80-acre tract in controversy in 1887, and the 10-acre tract in 1888, and that said two tracts constitute one body of land; that at the dates of said purchases, respectively, and prior thereto, said Carter was a citizen of the State of Texas, a married man and head of a family, and was residing with his family upon a tract of land of 65 acres about one and one-half miles distant from the land in controversy, which, together with a 40-acre tract of woodland, constituted and was the rural homestead of said John A. Carter and family; that he purchased the 80 and 10-acre tracts above mentioned for the purpose and intention of augmenting his said homestead; that from the time of the purchase of said last two mentioned tracts the said John A. Carter used the same for homestead purposes, by pasturing his work stock, cows, cattle and horses thereon, and as a hay meadow, from which he cut hay for his own use and for market, and put a part of said land—25 or 30 acres—in cultivation, and thereby impressed said two tracts of land with the homestead character; that he had no other pasture land or meadow upon which to pasture his work stock, cows and horses, or from which to cut hay for their use; that the several tracts of land above mentioned were less than 200 acres in amount, and were all of them used by the said John A. Carter and family for homestead purposes, when, some time during the year 1890, said John A. Carter sold all of said land except the portion in controversy; that the portion so sold embraced the 65 acres upon which the dwelling house was situated and the 40 acres of woodland; that when said sale was made John A. Carter reserved the 90 acres in controversy as a homestead, intending to improve it for that purpose, and in furtherance of such intention he rebuilt the fence around said land, built two pools thereon, and before the levy of the writ of attachment before referred to, purchased and went into possession of 50 acres of land adjoining the 90 acres above mentioned, and erected thereon a dwelling house for a home for himself and family, and with the intention to make said 50 acres and the 90 acres his homestead, and that said

50 acres and 90 acres, at the date of the levy of the writ of attachment and at the date of the sale of the sheriff, constituted the homestead of John A. Carter, but afterwards, and subsequent to the judgment and sale by the sheriff to defendants, he let said 50 acres go back to the party from whom he purchased, because he was unable to pay for same; but that the said 90 acres continued to be his homestead, and was never abandoned until after the dates of the levy of the writ of attachment and the sale made thereunder, as hereinbefore set out, and until the sale of said 90 acres to plaintiff and one H. B. Dennis on or about the 5th day of May, 1898; that the land in controversy, though cultivated in part by John A. Carter, through tenants, and by him continued to be used as a pasture and hay meadow to the date of its sale, was never occupied as a residence by the said John A. Carter after the sale of the other portions of his homestead; that said John A. Carter never acquired any other homestead; that the said John A. Carter remained in the exclusive possession and control of said 90 acres after its sale under the judgment hereinbefore mentioned till its sale to H. B. Dennis and E. Carter, as hereinbefore found. That after the sale by John A. Carter to Dennis and E. Carter, the said H. B. Dennis by deed conveyed all his interest therein to plaintiff, E. Carter."

Upon the foregoing facts the trial judge concluded, as a matter of law, that the land in controversy constituted a part of the said J. A. Carter's homestead at the time he sold the 65-acre tract and the 40-acre tract in 1890, and was reserved at that time for the purpose of making it a residence for himself and family; that, such purpose not having been abandoned and another homestead acquired, it continued to be the homestead of the said J. A. Carter, and was such homestead at the dates of the levy of the writ of attachment and foreclosure sale under which appellants claim; that the attachment, judgment, and foreclosure sale passed no title to appellants, but that appellee was the owner of said land by virtue of his purchases from and under the said J. A. Carter, and was entitled to recover the same.

We are of the opinion the facts warrant the conclusions of the trial court, and concur therein. The Constitution provides that the rural homestead may consist of one or more parcels of land, and it has been repeatedly held that it is not essential that such parcels should be contiguous to each other in order to invest them with the homestead exemption. If the original homestead is enlarged by subsequently acquired tracts, not exceeding the maximum allowed by law, and such tracts are separated from the tract upon which the homestead or mansion house is situated, such added lands must be used in some way in connection with the home place for the comfort, convenience or support of the family in order to impress upon them the homestead character. If, however, such subsequently acquired tracts are contiguous to the tract upon which the home of the family stands, then, in the absence of an intention not to make it a part of the homestead, it will become, immediately upon such acquisition, a part of the homestead by reason of the

improvements on and actual use of the land as a homestead to which it is attached, without other indicia of intention and designation of such land for homestead purposes. Campbell v. McManus, 32 Texas, 451; Brooks v. Chatham, 57 Texas, 31.

In the case at bar J. A. Carter purchased the land in controversy after he had established his homestead upon the 65-acre and 40-acre tracts sold in 1890. The tracts lay distant from the original homestead tract one and one-half mile, with intervening tracts belonging to other parties, but were purchased for the purpose of enlarging the homestead and to be used in connection therewith and as a part thereof. The acts done and use made of these two tracts in connection with the home place for the benefit of the family, as shown by the record, were a sufficient manifestation of intention and designation of said lands for homestead purposes.

Besides, it is clearly shown that the land in controversy was reserved when the tract upon which the home stood was sold in 1890, for the purposes of a homestead, and that J. A. Carter purchased and went into possession of 50 acres of land contiguous to said land in controversy and erected thereon a dwelling house and other improvements with the intention of making all of said lands his homestead, subsequent to the sale of the 65 and 40-acre tracts and before the levy of appellants' attachment and his purchase under the foreclosure proceedings. This intention, coupled with his acts of preparation to occupy the premises, was sufficient, under the test prescribed by the decisions of this State, to constitute said 50 acres his homestead, and the 90 acres in controversy, being contiguous thereto, became a part of such homestead under the rule announced in the cases of Campbell v. McManus and Brooks v. Chatham, supra, if it would not otherwise have formed a part thereof. See, also, Scott v. Dyer, 60 Texas, 135. That J. A. Carter never actually occupied the land with his family and was forced to relinquish his claim to the 50 acres because of his inability to pay for the same, is immaterial in view of the other facts in the case. The cancellation of the trade for the 50 acres occurred after the levy of the writ of attachment and purchase of the land in controversy by appellants. The contention of appellants, as presented by their fourth assignment of error, to the effect that the sale of the land to appellee was simulated and held by him to shield it from J. A. Carter's creditors, is not, in our opinion, sustained by the evidence. But if it is, the property being the homestead of the said Carter at the time appellee bought, creditors had no interest in it, and the nature of the transaction becomes immaterial.

Finding no error in the judgment of the court below, the same is affirmed.

*Affirmed.*

Writ of error refused.