Manseau vs. Mueller and others.

PLEADING: WAIVER: VOID CONVEYANCE. *(1) Waiver of objection to plaintiff's capacity to sue. (4) Waiver of homestead right. (2) Conveyance of insolvent debtor, when void. (3) Conveyance to adult son, in payment of wages, when void.*

1. In a suit to vacate a conveyance of land of M., an insolvent debtor, as fraudulent as to creditors, where the complaint alleged generally plaintiff's appointment by the court as receiver of the property of M., and that he had qualified as such, without stating the character of the proceedings which resulted in such appointment, and the answer *merely denied his appointment,* proof of such appointment in proceedings supplementary to execution against M. was admitted, notwithstanding an objection on the ground that the complaint did not state a cause of action. *Held,* that the complaint states a cause of action, and if it does not show plaintiff's *capacity to sue,* that objection was waived by failing to take it *by answer or demurrer.* R. S. 1858, ch. 125, secs. 5, 9.

2. Where an insolvent debtor conveys land as a mere gift in trust for his own benefit, the conveyance is void as against creditors, whether the grantee does or does not know of the insolvency. And a conveyance made and received with intent to hinder, delay or defraud the grantor's creditors, is void as against them.

3. If a son, living at home with his father after majority, should render him services under an *express agreement* for the payment of wages, a conveyance to him by the father of land not exceeding in value the wages due, might be valid even against creditors, as resting on a valuable and adequate consideration; but in this case, the court below having found in effect

that there was no such previous express agreement to pay wages, and that the conveyance was in fraud of creditors, this court, in the absence of any preponderance of evidence to the contrary, affirms a judgment vacating the sale.

4. A claim, *first made in this court*, that ten acres of the land so conveyed (no particular ten acres having been selected before or during the trial below), formed a part of the father's homestead and should therefore have been excepted from the judgment, *held* to be *too late.*

APPEAL from the Circuit Court for *Manitowoc* County.

The defendant *Henry Mueller*, being the owner of two lots of land separated only by a highway and containing forty acres and thirty acres, respectively, conveyed the forty acres to his son, the defendant *Bruno Mueller*, in March, 1875. *Bruno* was then about twenty-five years of age. Soon after such conveyance, *Bruno* executed a mortgage on the same forty acres to the defendant *Krumdick*, to secure the payment of five hundred dollars, which the latter loaned to *Bruno*, and with which he paid certain debts of his father. Among these were two mortgages upon the same land. The two lots were occupied and used as one farm by *Henry Mueller*. He resided on the thirty acres, and since the conveyance has continued to reside thereon with his family. *Bruno* is unmarried, and has always lived with his father.

When the conveyance was made to *Bruno*, his father was indebted to Theodore C. Shove, as surety for a neighbor who was probably insolvent, in the sum of $300 and interest thereon at ten per cent. for about one year, for which he had signed a judgment note. The note was then overdue. In July following, judgment was entered upon such note in favor of Shove, and execution thereon was duly issued, and returned unsatisfied. Proceedings supplementary to execution were instituted by Shove before Mr. Estabrook, a court commissioner, which resulted in the appointment of the plaintiff as receiver of the property of *Henry Mueller*, pursuant to the statute (Tay. Stats., 1566, § 107); and the plaintiff duly qualified as such receiver. Thereupon the plaintiff brought this action to set aside the conveyance of the forty acres to the defendant *Bruno*,

alleging in his complaint that the same is fraudulent and void as against the creditors of the grantor; also to subordinate the mortgage to *Krumdick* to Shove's judgment, and to obtain a sale of the forty acres, and the payment of such judgment out of the proceeds thereof. The foregoing facts appear from the pleadings and proofs.

The trial of the cause resulted in findings that the conveyance by *Henry* to *Bruno* was without consideration, and was given for the purpose of cheating and defrauding the creditors of the grantor, particularly Shove, but that *Krumdick* took his mortgage in good faith, without notice of the fraudulent purpose for which the conveyance to *Bruno* was executed.

The judgment establishes *Krumdick's* mortgage as a lien upon the land paramount to Shove's judgment, but sets aside and annuls the conveyance to *Bruno* as against Shove, as fraudulent, and directs a sale of the land subject to *Krumdick's* mortgage, and the payment of Shove's judgment out of the proceeds thereof.

Further reference to the pleadings and evidence will be found in the opinion. The defendants *Mueller* appealed from that part of the judgment which annuls the conveyance to *Bruno*, and directs a sale of the land.

For the appellants, there was a brief by *White & Forrest*, and oral argument by *Mr. Forrest*.

For the respondent, there was a brief by *H. G. & W. J. Turner*, and oral argument by *W. J. Turner*.

LYON, J. 1. An objection founded upon an alleged defect in the complaint, will first be considered. The complaint alleges, generally, the appointment by the court of the plaintiff as receiver of the property of the defendant *Henry Mueller*, and his qualification as such, without stating the supplementary proceedings which resulted in such appointment. The answer denies his appointment, but does not deny his right to maintain this action if he was appointed. When proof of such appointment was offered, an objection thereto was interposed on behalf of the defendants, but the objection was overruled, and

the evidence received.   This is an objection that the complaint fails to show that the plaintiff has legal capacity to sue, rather than that the complaint fails to state a cause of action.   The objection not having been taken by demurrer or answer, it must be deemed to have been waived.   R. S. 1858, ch. 125, secs. 5 and 9.   Issue was taken upon the allegation of the plaintiff's appointment as receiver, and upon that alone.   On this issue the proof was admissible, and, when received, it showed that the plaintiff has legal capacity to maintain this action.   R. S. 1858, ch. 134, sec. 96.   For these reasons we think the objection was not well taken.

2. As to the facts.   The defendant *Henry Mueller* was insolvent when he executed the conveyance in question to his son, *Bruno;* or, at least, such conveyance rendered him insolvent if it is upheld.   If, therefore, it was made without consideration — if it was a mere gift in trust for the grantor, — it cannot stand as against the creditors of the grantor.   R. S. 1858, ch. 107, sec. 1.   And in such case it is quite immaterial whether the grantee knew or did not know that his grantor was insolvent.   So, also, if the conveyance was executed and received with the intent to hinder, delay or defraud the creditors of the grantor, it is void as against such creditors.   R. S. 1858, ch. 108, secs. 1 and 5.

The defendant *Bruno Mueller* became of age more than four years before his father conveyed to him the land in controversy.   Both father and son testify, that when the latter became of age, his father agreed to pay him wages if he would remain at home and work for his father, but the amount or rate of such wages was not agreed upon; that a short time before the conveyance was executed, they agreed upon twelve dollars per month as the rate; that, on a partial accounting, they found due *Bruno*, on account of wages, over five hundred dollars; and that the land was conveyed in payment or on account of such indebtedness.   It appears that the land conveyed was worth about $900; that it was incumbered by mortgages to the amount of about $500; and that *Bruno* took the conveyance subject to the mortgages.

Within the rule of *Tyler v. Burrington*, and the cases there cited (39 Wis., 376), if an express agreement to pay wages was made, *Bruno* paid an adequate and valuable consideration for the land, and the conveyance is not a mere voluntary one. The court found that the elder *Mueller* was not indebted to *Bruno* when he made the conveyance; and that *Bruno* paid no consideration for the land. In substance and effect this is a finding that there was no express agreement by the father to pay his son wages, and hence, that the testimony of father and son in that behalf is untrue.

The question we are to determine is, whether there is such a preponderance of evidence in support of the alleged express agreement of the father to pay *Bruno* wages, as will authorize us to hold, against the findings of the circuit court, that such agreement was proved. The testimony of both father and son, particularly that of the father, in respect to such alleged agreement, is quite unsatisfactory. To the question put to him by his own counsel, "Was there any thing said between you and *Bruno*, when he was twenty-one years old, as to your paying him sometime in the future for the work he did from his twenty-first year on?" the father answered, "No." And it was only when his attention was particularly called to the subject of wages, frequently by leading questions, that he testified to the agreement. For example, immediately after the above question and answer, we find the following: "You stated in your examination before Estabrook, that the arrangement between you and your son was this: 'When he was twenty-one years old, he said he would stay with me if I would give him wages.' How is that? 'A. We made no certain sum. I stated that, but we did not agree on a certain sum. Q. What did your son say at this time [when he was twenty-one years old]? A. That he would stay with me. Q. Did you agree to do anything if he would stay with you? A. I agreed to give him all I had. This was not at the time when he was twenty-one. It was when he was twenty-four. Q. When he was twenty-one years old, you say, *Bruno* said he would stay with you if you would give him wages. You said

that in your examination before Estabrook. Did *Bruno* say this to you? A. *Bruno* said that to me. Q. What answer did you make to that? A. I told him to stay with me until I should be able to pay him."

*Bruno's* testimony concerning the alleged agreement is more direct than that of his father; yet he commences it in a manner that implies some doubt or uncertainty. The first question on the subject put to him by his counsel, was: "At or about the time you were twenty-one, did you have any conversation with your father relative to staying with him, and under what conditions were you staying with him?" to which he answered: "I think we had a talk about staying with him after I was twenty-one. I think I said I would stay with him if he would give me wages — what was right." Later, however, he testified positively to the agreement.

It appears from the testimony of these parties, that nothing more was said between them about wages, or payment for work, until four years and seven months after the alleged agreement was made. *Bruno* continued to live with his father and work on the farm the same as during his minority, and his father supported him all that time, supplying him with money and clothing, of which no account whatever was kept. After the conveyance, the same state of things continued. The products of the two lots were not kept separate; father and son worked on both lots, using and treating them as constituting one farm; and the products and proceeds of the whole were used for the benefit of the family just as they had been used before the conveyance. In short, it does not appear but that the father had the same control over and beneficial interest in the lot conveyed to *Bruno*, after such conveyance, that he had before. Moreover, at the time such conveyance was made, the father attempted to transfer to *Bruno* nearly all of his personal property liable to seizure on execution. True, its value was small, but the fact is none the less significant. When the above facts are considered in connection with the further facts that the conveyance of the land and the transfer

of the personal property to *Bruno* left the father without any property liable to seizure for his debts, and that his indebtedness to Shove was then due, the presumption is very strong that the conveyance to *Bruno* was made in secret trust for the grantor, and with intent to defraud his creditors, especially Shove; and that the theory that it·was made pursuant to a previous agreement to pay *Bruno* wages, has no foundation in fact, but was an afterthought.

At all events, the *indicia* of fraud in the conveyance, and the circumstantial evidence that the same was made without consideration and in trust for the use of the grantor, are quite too numerous and significant to be disregarded. They controlled the findings and judgment of the circuit court; and we are unable to say that the court did not find and adjudge correctly on the evidence before it.

.3. It is claimed by the learned counsel for the defendants, that ten acres of the land conveyed to *Bruno* was part and parcel of the homestead of the grantor (who retained but 30 acres of his original farm and homestead), and hence that the conveyance is valid as to such ten acres, although invalid against creditors of the grantor as to the remainder of the land.

Had an execution against the property of the grantor been levied upon the lot before he conveyed it to *Bruno*, doubtless he might have selected and held ten acres of it in a compact form adjoining his other lot, as part and parcel of his homestead. It is also probable that had *Bruno* made such selection on the trial of this action in the circuit court, he would be entitled to hold that specific ten acres against his father's creditors. But this homestead claim is made for the first time in this court, and no specific parcel of land has ever been designated as the subject of such claim. Should we reverse this judgment because an indefinite ten acres of the lot was not excepted from its operation, *Bruno* may never make the selection. If he should not, the same judgment would have to be reëntered. To reverse a judgment on appeal and remand the cause, not for a new trial, but with directions to the court below, in a

given contingency, to render the same judgment over again, would be novel practice. For these reasons we think this homestead claim comes too late to be enforced.

*By the Court.* — The judgment of the circuit court is affirmed.

RYAN, C. J., took no part.