# First National Bank of Tuscaloosa *v.* Kennedy.

*Petition by Fraudulent Grantor for Homestead Exemption after Annulment of Conveyance on Bill by Grantee.*

1. *Fraudulent grantor not estopped to claim homestead exemption upon conveyance being annulled at suit of creditor.*—When a debtor has conveyed to third persons lands, including his homestead interest, to hinder, delay and defraud his creditors, and such conveyance has been set aside and avoided at the suit of creditors by bill filed against him and his grantee, such debtor then has the same right to assert his homestead exemption against such creditor, as he would have had, had the conveyance never been executed by him. (COLEMAN, J., dissenting, holds that the cancellation of the fraudulent conveyance, at the suit of the creditors, does not restore to the debtor any right or interest in the property which he had parted with by his conveyance, which was binding between him and the grantee; and that, therefore, owning no interest in the property, the debtor could not to any extent, defeat the decree of the court subjecting it to the payment of his debts, the grantee not complaining.)

[First National Bank of Tuscaloosa v. Kennedy.]

2. *Exemption claim filed after decree annulling conveyance does not come too late.*—Where on a bill filed by creditors against their debtor and his grantee to vacate a fraudulent conveyance, a decree is rendered against the complainants, which, on appeal by them, is reversed, and a decree annulling the conveyance and condemning the lands to sale is rendered by the Supreme Court, and, thereupon, the debtor files in the chancery court in which the original bill was filed his petition for homestead exemption, or $2,000 of the proceeds from its sale, if the property conveyed embraced in the fraudulent conveyance be ascertained to be of greater value than that sum, and upon the sale of said property under the decree bringing the sum of $8,000, the debtor files another petition claiming $2,000 of the proceeds of said sale as exempt, the claim is presented in sufficient time, and should be allowed by the court, and it is error for the chancery court to dismiss the petition. (COLEMAN, J., dissenting, holds that after final decree of the court condemning the land to sale, the claim of exemptions comes too late and can not be allowed.)

APPEAL from the Chancery Court of Tuscaloosa.

Heard before the Hon. THOMAS COBBS.

The appeal in this case is from a decree of the chancery court of Tuscaloosa, rendered on August 28, 1893, whereby it was decreed that John S. Kennedy, the appellee, was entitled to two thousand dollars as and for a homestead exemption, out of the proceeds of the sale of certain lands, which were condemned to be sold, in a suit in which the appellant, the First National Bank of Tuscaloosa, was complainant, and in which the appellee, Kennedy, was the defendant; and whereby it was decreed that the First National Bank of Tuscaloosa, out of the proceeds of said sale, should pay unto John S. Kennedy the sum of two thousand dollars.

This is the second appeal in the case, and the facts in reference thereto are substantially the same as when reviewed on the former appeal, and set forth in the report of the case of *Kennedy v. First National Bank of Tuscaloosa,* 107 Ala. 170. It is unnecessary to make a more detailed statement of facts on the present appeal; especial reference being here made to the report of the case on the former appeal.

CABANISS & WEAKLEY and FRANK S. MOODY, for appellant.—1. A decree of a court of equity, like a judgment at law rendered upon the merits, is conclusive of the subject-matter of the controversy—the thing adjudi-

[First National Bank of Tuscaloosa v. Kennedy.]

cated—of all that might or ought to have been litigated
or decided.—*Tankersly v. Pettis*, 71 Ala. 179 ; *Murrell v.
Smith*, 51 *Ib*. 301 ; *Dowell v. Applegate*, 152 U. S. 327.

2.   After a judgment or decree *in rem* adjudging prop-
erty to be liable to the demand asserted against it, and
condemning the property to sale for the satisfaction of
the demand, it is too late for a party to the suit to assert
any claim to the property, either that of a homestead or
otherwise.—*Turner v. Vaughan*, 33 Ark. 454 ; *Brownell v.
Stoddard*, 42 Neb. 177 ; *Rector v. Rotton*, 3 Neb. 171 ; *Mc-
Farland v. Goodman*, 6 Biss. 111 ; *Graves v. Graves*, 106
Ind. 118 ; *Haas v. Shaw*, 91 Ind. 384 ; *Perkins v. Bragg*,
29 Ind. 507 ; *State v. Manly*, 15 Ind. 8 ; *Carpening v.
Kincaid*, 82 N. C. 202 ; *Collins v. Chantland*, 48 Iowa,
241 ; *Hemenway v. Wood*, 52 Iowa, 21 ; *Larson v. Rey-
nolds*, 13 Iowa, 579 ; *Haynes v. Meek*, 14 Iowa, 320 ;
*Wright v. Dunning*, 46 Ill. 275 ; *Miller v. Sherry*, 2 Wal-
lace, 237 ; *Henderson v. Still*, 61 Miss. 391 ; *Hill v. Lan-
caster*, (Ky.) 11 S. W. Rep. 74 ; *Kirk v. Cassady*, (Ky.)
12 S. W. Rep. 1039 ; *Manseau v. Mueller*, 45 Wis. 430 ;
*Lee v. Kingsbury*, 13 Tex. 68 ; *Tadlock v. Eccles*, 29 Tex.
783 ; *Stanley v. Ehrman*, 83 Ala. 215 ; *Sherry v. Brown*,
66 *Ib*. 51 ; *Toenes v. Moog*, 78 *Ib*. 558 ; Waples' Home-
stead & Ex., p. 531, § 13 ; 2 Freeman Judgments, § 303 ;
Thompson on Hom. & Exemp., §§ 715-726 ; Wait Fraud.
Conv., § 168 ; Smythe Home. & Ex., § 414.

3.   Homestead and other exemptions have always
been construed by the Supreme Court of this State to be
mere personal privileges, which might be, and are
waived, by a failure to claim them in the prescribed
manner, when the statutes apply, or before an order of
sale in a proceeding *in rem*.—*Stanley v. Ehrman*, 83 Ala.
215 ; *Sherry v. Brown*, 66 *Id*. 51 ; *Martin v. Lile*, 63 *Id*.
409 ; *Randolph v. Little*, 62 *Id*. 396 ; *Toenes v. Moog*, 78
Ala. 558 ; *Bell v. Davis*, 42 Ala. 460.

4.   A fraudulent deed passes a good title as between
the parties, and it is only avoided to the extent of the
complaining creditors' debt.   Any surplus above that
goes to the grantee.   The grantor, therefore, has no
right to an exemption in the property.—Bump. on
Fraud. Con. (3d ed.), pp. 482, 620, and authorities
there cited ; Wait on Fraud. Con. (2d ed.), § 171 ;
*Quinn v. People*, (Ill.) 34 N. E. Rep. 148.

H. M. SOMERVILLE, ORMOND SOMERVILLE, WILLIAM
C. FITTS and A. B. McEACHIN, *contra.*—In addition to
referring specially to their brief, which is set out at
length in the report of the case on the former appeal,
counsel for appellee submit the following propositions
and authorities :

1.   Upon the original hearing of the exemption
claim in the lower court (Spring Term, 1891) an
issue was regularly made up and tried.   The appellant
(then homestead contestant) filed an affidavit (as pro-
vided in Code of 1886, § 2520), asserting that the home-
stead claim in question was invalid entirely.   This
tendered an issue which was accepted by the claimant,
and upon this issue the trial was regularly and formally
entered into.   The burden of proof was wholly upon the
contestant (Code of 1886, § 2526), and if it neither in-
troduced nor offered to introduce any evidence it is its
own fault, and the contest fails.—*Kolsky v. Loveman*, 97
Ala. 543.   But courts judicially know their own records,
and may look to the entire proceedings and the judg-
ment in another cause, so far as they are pertinent to
the issues being tried between the same parties.—
*Chemical National Bank v. Armstrong*, (Ohio) 50 Fed. Rep.
798 ; *Minor v. Stone*, 1 La. An. 283 ; *State v. Bowen,* 16
Kan. 475 ; *Palaud v. Ill. Cen. Railway Co.*, (La.) 7 So.
Rep. 899 ; *National Bank v. Bryant*, 13 Bush (Ky.) 419 ;
*Baker v. Myyatt*, 14 Iowa 131 ; *Enix v. Miller*, 54 Iowa
551 ; *Jordan v. Circuit Court*, 69 Iowa 177 ; *State v. Ulrich*,
19 S. W. Rep. 656.

2.   Matters in issue in a cause that are decided by the
Supreme Court are, as a general rule, taken from the
control of the court of chancery by the mandate of the
Supreme Court.—*Sortwell v. M. & W. River R. R. Co.*,
56 Vt. 180.   The record of this cause on former appeal
shows that the entire question of the validity, *vel non*,
of this homestead claim was in issue, and that decree
was, therefore, conclusive on the parties, and left no dis-
cretion in the chancery court.—*Manny v. Harris*, 2
Johnson 24.   The mandate was to grant the relief,
based upon the Supreme Court's opinion that the claim-
ant was entitled to it.   If that was not the necessary
meaning of the opinion and decree, then it follows that
the original hearing, both in the lower and appellate
courts, was merely a moot-court proceeding, conducing

[First National Bank of Tuscaloosa v. Kennedy.]

to nothing; and that at the end of five years of litigation
the cause stands where it began; the contestant now
asking for a trial *de novo.*—See specially *Johnston v.
Glasscock*, 2 Ala. 249; *Ex parte Sibbald v. United States*,
12 Peters 488.

HARALSON, J.—We have carefully examined the
briefs and arguments of counsel for appellant on this
appeal. It is confessedly an application for a rehearing
of the case as decided at the last term. A few points
are insisted on now, which it is urged were not con-
sidered by the court on the other appeal. The case
comes on the same pleadings and proofs as before, and
all the questions raised now were in the case before.
We discover nothing leading to a change of our views,
and we adhere to the former ruling. It would be a use-
less task to go over the same ground, to arrive at the
same conclusions heretofore expressed, and we must de-
cline to do so.

Let the decree of the chancery court be affirmed.
Affirmed.

BRICKELL, C. J., and HEAD, J., not sitting.

COLEMAN, J., dissenting.—There are two proposi-
tions of law involved in this case, which were considered
at great length and determined when the case was here
on a former appeal, reported in 107 Ala. 170, dissenting
opinion *Ib.* 200. No new questions are raised on this
appeal. My associates, Justices McCLELLAN and HARAL-
SON, adhere to their former opinion without further argu-
ment or citation of authority. I find in the brief of
appellant's counsel a most excellent and exhaustive
review of many texts and decisions bearing upon one of
the propositions involved in the case, viz., that if the
debtor Kennedy owned a homestead interest in the land,
he had the right to set up his claim in defense of the
creditors' bill, and that if he failed to do so, before final
decree condemning the land to sale, he would not be
permitted to assert such claim afterwards. On the first
proposition, I rely upon the argument and authorities
cited in my former opinion. Upon the second proposi-
tion, the one just stated, in addition to what was said, I
cite the following argument and authorities contained in
the brief.

Judge Thompson (Homestead, § 726) says: "Where a judgment creditor brings a bill in equity to set aside a conveyance of certain realty to the debtor, as having been made in fraud of his rights, if the debtor would set up a right of homestead in the premises, he must do it in that suit."

Smythe on Homestead and Exemptions, § 414, lays down the rule thus: "In actions and in practice in relation to the homestead right, the well known rule of law that parties to a suit in a court of competent jurisdiction, when they labor under no disability, are bound by the determinations of their rights if fairly before the tribunal, applies as well to actions affecting this right as to all others. And when the rights of parties have been once adjudicated, they can not again be litigated in the same or any other court of co-ordinate jurisdiction. So, if unmarried persons, the heads of families, capable of releasing the homestead, and occupying it, fail to assert the right when the court adjudicates upon it in a suit to which they are parties, they will be concluded from afterward asserting it." Citing *Wright v. Dunning*, 46 Ill. 275.

In Texas it is said: "There being nothing in the nature of the homestead right to exclude it from the operation of the general principle, that the judgment or decree of a court of competent jurisdiction, directly upon the point necessarily involved in the decision of the question, is conclusive between the parties and privies, upon the same matter coming directly in question in the same or another court of concurrent jurisdiction, it is essential on the one hand that all parties whose claims are sought to be disbarred be brought before the court, and on the other, that the claims be properly presented so the benefits intended to be conferred shall be protected," citing various Texas cases.

Waples says (Homestead & Exemptions, p. 531, § 13): "It has been frequently decided that after a debtor has made a fraudulent conveyance of land to cheat his creditors, and they have brought suit to set it aside for fraud, he may yet claim homestead therein in *the same proceedings*, though the fraud be proven or admitted. But it is said to be too late to claim after neglecting to do so in such proceedings," citing the Arkansas, Iowa and Texas cases. Again he says, (p. 882, § 3): "It is

[First National Bank of Tuscaloosa v. Kennedy.)

held too late to claim exemption in attached property, after judgment has perfected the contingent lien created by the act of attaching ; for then the debt sued on has become the debt of the property itself. When the case is pending the writ may be quashed so far as it bears on exempt property, but after judgment the right to claim is waived.''

''The form of the judgment or decree in suits to annul fraudulent transfers, or reach equitable assets, and the right secured by the adjudication constitute important branches of our subject. The usual attributes attach to a judgment in this class of cases. It is regarded as an estoppel upon the parties as to the subject matter to be investigated.''—Wait on Fraudulent Conveyances, § 168.

The court was unfortunate in citing Mr. Bump (Fr. Convey. p. 482) as supporting even their *first* proposition. The citation relates to the right of the *grantee* to have a revivor of a pre-existing right upon the annulment of the conveyance.

We remark, incidentally merely, since we are not now discussing that branch of the case, that on page 483, Mr. Bump shows his concurrence with Mr. Justice COLEMAN thus : ''As a fraudulent deed passes a good title as be-tween the debtor and the grantee, the former is not enti-tled to a homestead or exemption out of the property, although the creditors set the deed aside as to all that is liable to be taken on execution.''—See also p. 620, same text.

We do not find in Bump's work on Fraudulent Con-veyances any special reference to the point now under discussion.

Mr. Freeman, the annotator of the American Decis-ions, thus lays down the law on this question : ''A de-cree ordering a sale necessarily negatives every claim that the premises are not subject to sale. Hence the homestead interest is necessarily disposed of by a decree to which both husband and wife are parties ; and neither can, therefore, successfully resist an action for property sold under an order of sale, issued in a suit to which he or she was a party, on the ground that the land sold is a homestead.''—2 Freeman on Judgments, § 303.

The case of *Wright v. Dunning*, 46 Ill. 275, already referred to, fully supports our position.

*Leopold v. Krause*, 95 Ill. 440, holds the *grantee* was

entitled to the exemption, but protection to homestead was made in final decree. It is true it was not set up in answer, but in reply to that objection the court calls attention to the fact that the allegations of the bill averred the right, saying: "It is not necessary to allege in an answer facts stated by the bill."

In *Jaffers v. Ancals*, 91 Ill. 487, also upon recognition in the bill, the court in the final decree setting aside the conveyance, ordered homestead to be assigned to Mrs. Jaffrey, who had continued to occupy the land.

In *Muller v. Inderreiden*, 79 Ill. 382, the exemption was also declared in the final decree.

The Illinois cases make clear the character of a decree simply annulling the conveyance and remitting the creditor to his execution. Under such circumstances, there being no decree of condemnation to sale, of course, when the execution of law issued, the debtor may claim before sale, as in other cases of execution. Such a decree, in aid of the execution lien, may be truthfully said not to affect the homestead right, when that could not be said as to a decree, ordering a sale by a commissioner or register under the decree.

Thus in *Mitchell v. Sawyer*, 115 Ill. 650, no decree of condemnation was sought, and the court did not, in its decree, provide for the homestead. To this objection the court said: "It is objected there is no provision made in the decree as to homestead and dower rights in the land. There was no need for that. These rights are not involved nor in any way affected by the decree. When the sheriff comes to sell on execution, he can deal with the homestead as the statute directs he shall."

To the same effect is *Ammondson v. Ryan*, 111 Ill. 506. It was there objected for appellant that the homestead interest was not protected. It was replied by appellee's counsel (brief, p. 508) that "the court does not decree the sale of the homestead, as is claimed. The decree only sets aside the decree of conveyance to appellant's wife, and directs that the sheriff proceed and sell the lands on the execution issued, *on* the *judgment at law*." The court agreed with this view, saying: "It is insisted the court erred in decreeing the sale of appellant's homestead to satisfy the judgment. It is a mistake to suppose that the sale of the homestead was decreed. The decree only sets aside the conveyance to the wife, and

directs that the sheriff proceed to sell the lands in the execution issued on the judgment. In making the sale on execution, the sheriff will, as in the case of any other sale under execution, take the steps for reserving the benefit of the homestead, which are prescribed in the homestead Exemption Act, and the decree herein should, in no manner, interfere with or affect the homestead right. Section 8 of the Homestead Act, which is referred to, directing the course to be pursued in the case of the enforcement of a lien in a court of equity, upon premises including the homestead, does not apply in this case. This is no case of enforcing a lien, but of removing a fraudulent conveyance, void as to creditors, out of the way of the execution at law.''

*Kuevan v. Specker*, 11 Bush 1, cited in the majority opinion supports in the strongest manner, our position as to the proper practice. There, pending a bill to set aside the conveyance and to subject the property to sale, the wife of the grantor offered to file an amended *answer* in the nature of a petition, asking that a homestead be reserved to them by the *judgment*. The lower court refused to permit the pleading to be filed, adjudged the deeds fraudulent and ordered a sale. The court of appeals said it was highly proper that Mrs. Kuevan and her husband should ask to have the homestead reserved by the judgment, or the sum of $1,000 paid over out of the proceeds of sale. If the right could not have been asserted until *after* the judgment, the filing would have been properly disallowed as premature. The judgment was reversed with direction to award homestead.

In *Kirk v. Cassady*, (Ky.) 12 S. W. Rep. 1039 (Jan. 18, 1890), the land was held in the name of a third party in fraud of the real owner's creditors. This charge was made in the pleading in the suit to which the claimant was a party. After condemnation of the land, he claimed his exemption. The court said : ''It is alleged, however, that Kirk, the appellant, was permitting one Chapman to hold the title for his (Kirk's) benefit, in fraud of the rights of creditors and for the fraudulent purpose of preventing the plaintiff from making his debt. Upon such charge of fraud, it was the duty of the appellant to make all the defense he had to prevent the recovery by the plaintiff, as has been settled by this court in two cases, that of *Hill v. Lancaster*, 11 S. W. Rep. 74, and

*Snapp v. Snapp,* 9 S. W. Rep. 705. The debtor was before the court upon a distinct charge that he was practicing a fraud to 'prevent his land from being subjected to the payment of his debts, and the land being his homestead, it was his duty to make that defense. It would have ended the controversy and established the fact that no fraud was practiced, and particularly in this case, as the land was not worth $1,000.''

In *Hill v. Lancaster,* 11 S. W. Rep. 74, (March 9, 1888), a bill was filed by creditors to set aside a conveyance of land for fraud. The vendor and vendee were defendants. They answered, denying all fraud and alleging the conveyance for a valuable consideration. A judgment was rendered, setting aside the conveyance and *subjecting the real estate to the plaintiff's demand.* At the following term of the court, Hill, the debtor, and wife, she not having been a party, filed their joint petition setting up a homestead right, and the same having been sold by the court's commissioner, and not having brought exceeding $1,000, they asked that either the land or its proceeds, be set apart to them as a homestead. The petition was denied. In affirming this ruling of the circuit court, the court of appeals, through BENNETT, J., said:

"Here the appellees, Lancaster *et al.*, sought to subject the appellant's entire right and title to this real estate to the payment of his debt. He joined issue upon the merits, denying that he had any interest whatever in the land, not only not claiming a homestead, but not disclosing any fact or circumstance which would, in any contingency, entitle him to a homestead. The chancellor decided the issue against him, and rendered judgment subjecting his entire interest in the real estate to the payment of a debt. The judgment was final. The power of the chancellor over the judgment, it being final, ceased upon the close of the term at which it was rendered. At a subsequent term the appellant sought to file a petition in the nature of an answer, setting up his right to a homestead. But it having been adjudged that his entire interest in the land should be sold, which judgment, as said, was final, the chancellor correctly rejected the petition. It is not denied, indeed, it is a fact, that the appellant, as between him and the appellees, Lancaster *et al.*, as his creditors, was entitled to a homestead in said real estate; but his entire inter-

est in this real estate, having been sought to be sold to satisfy the demand of these creditors, and he having appeared and defended upon the merits, and having failed to set up his homestead right, which would have been a complete bar to appellee's action, if the real estate was not worth more than $1,000, if more than $1,000, then a bar to the extent of $1,000 worth of land, his efforts to set up his right to his homestead came too late. To allow a defendant to split his defenses, relying upon one until final judgment is rendered upon it against him, and at the next term open the judgment and plead another defense, and so on, would be a mockery of legal justice. Therefore, it is a universal rule that the final judgment of a court of competent jurisdiction is not only conclusive of all issues actually decided, but of all that might and should have been decided, by it, and there is no good reason why the assertion of a homestead right should'be made an exception to this salutary rule." See also *Honaker v. Cecil*, 84 Ky. 202, to same effect.

*Smith v. Rumsey*, 33 Mich. 183, cited by the majority, was a bill by a surety, who had paid, against a co-surety who had made fraudulent conveyances to set them aside and subject the property to an execution lien. Defenses going to the whole case were made, and the answer further averred that *one part of the land was the debtor's homestead*. The lower court annulled the conveyances without saving the homestead interest, and directed the *sheriff to proceed to sell under the levy*, and apply the proceeds to payment of sum adjudged. The Supreme Court held the debtor was entitled to homestead and modified the decree of the lower court, so as to protect and have set apart the homestead interest to the debtor, that not being liable to the complainant's demand.

The same practice was pursued in *Rhead v. Honuson*, 46 Mich. 243, where the final decree recognized the homestead claim. That case also distinguishes between a bill in aid of an execution and one to reach equitable assets, and in that case the conveyance was merely annulled and the land declared to be "subject to sale on the execution." The court said: "This bill must be considered subject to its nature. It is not filed to reach property incapable of seizure on execution, and therefore, based on the theory that the legal remedy has been exhausted. Very far from it. The principle on which

it proceeds is that a legal remedy is in fact progressing, and which being fraudulently obstructed, the aid of the court is needed to remove that obstruction."

In *Stevenson v. Jackson*, 40 Mich. 702, which was a bill to specifically perform a contract to convey a homestead, in which the wife did not join, COOLEY, C. J., said: "But a more important fact is this: that Garvin in this suit, while stating the fact that the whole eighty acres was occupied by the Jacksons as a homestead, which in the constitutional understanding of the term could not have been, places his defense to the suit altogether on other grounds, and does not ask that what might have been claimed as a homestead should be set off to him. The position then of the case is this: that while the facts are stated from which it appears that a homestead might be claimed, we are not asked in this suit to protect any homestead right. We shall not, therefore, interpose to protect any."

*Henderson v. Still*, 61 Miss. 391, was ejectment by purchaser at sale under chancery decree, rendered at suit of N. Leopold & Co., complainants, against the appellee as one of the defendants. In the chancery proceeding, which was to subject the land to the payment of a debt, the land was ordered sold without any reference to the right in appellee to homestead exemption. In the chancery suit she claimed none. The lower court instructed the jury that the chancery sale did not divest appellee of her right to the exemption, and that the purchaser took subject thereto. CAMPBELL, C. J., with his usual terseness delivered the following opinion: "The appellee lost her right to claim homestead exemption by not asserting it in the chancery suit. *Miller v. Sherry*, 2 Wall. 237. Judgment reversed and cause remanded for a new trial." The chancery suit was evidently to set aside a fraudulent conveyance since appellee's counsel relied on *Sears v. Hanks*, 14 Ohio St. 298.

The Chief Justice evidently thought the opinion of *Miller v. Sherry, supra*, was all the argument needed. It will appear hereafter that in that case the U. S. Supreme Court held the exemption claim to be concluded by the decree.

The case of *Edmonson v. Meacham*, 50 Miss. 34, was very similar to this, and the exemption was allowed,

after sale, upon petition, but an examination of that case, and of *Lessley v. Phipps*, 49 Miss. 790, upon whose authority it was decided shows that the decision rests upon a construction of the homestead laws of Mississippi, wholly at variance with the Alabama rules upon the subject. Under these cases, it is held that continued occupancy gives the right, at any time, to claim the exemption. The question as to the time of claiming the exemption was but little considered. No outside authorities are cited in the case in 50 Miss. Thus the court says : ''Meacham was residing upon the property with his family, which the creditors subjected to their debts. He had such title to ownership as made the property liable, and therefore fulfills the conditions upon which the exemption depends. If his claim should be repudiated, the benefit intended by the statute will be denied to him. The case of *Lessley v. Phipps*, is in point, to the effect that his right has not been lost.''

*Lessley v. Phipps*, 49 Miss. 790, is not in accord with Alabama law. There the land had been sold under attachment, and there was no formal claim of exemption before sale. The view taken of their law thus appears in the opinion : ''The title to exemption is dependent on the facts of the debtor being the head of a family, and residing upon the premises as a home. * * * * If, therefore, he has not forfeited his rights as by abandonment, the sheriff is forbidden to levy upon the homestead. It is not subject to execution. If he takes in execution exempt personal property, he is liable in trespass or trover, or the debtor may bring replevin against a purchaser from him.—*Moseley v. Anderson*, 40 Miss. 49. If the sheriff could not rightfully levy in debt on the property, a purchaser from him would get no title.''

This is one of the *two* cases in the United States holding claim can be made *after* decree, and for the reasons stated it could not be, in any event, authority in Alabama, where a *claim* is necessary. It is not, however, law even in Mississippi, and is virtually overruled by the later case of *Henderson v. Still*, 61 Miss. 391.

In *State v. Diveling*, 66 Mo. 375, the question of homestead exemptions arose in a peculiar manner. A bill was filed by creditor, after death of debtor to annul conveyance. *No decree of condemnation or sale was made*. The administratrix was directed to file an inventory of

the land in the probate court. She did not do so, and to an action upon her bond for the failure, pleaded the exemption, which was allowed. The sole question decided was that the fraudulent conveyance did not defeat the homestead right.

In *Buck v. Ashbrook*, 59 Mo. 200, the proceeding was by a creditor of the husband, to subject real estate purchased by him in wife's name to defraud creditors. The court decreed a sale of the property to satisfy the creditor's demand, but, *in the decree* ordered the husband paid $1,000 out of the proceeds for a homestead. Here is another instance of the proper practice in such cases.

*Dortch v. Benton*, 98 N. C. 190, and *Rankin v. Shaw*, 94 N. C. 405, are each cited in majority opinion upon first proposition. In the former, the court below allowed a personalty exemption *in the final* judgment, and the Supreme Court modified the judgment, so as to allow *therein* a homestead exemption. In the latter (94 N. C. 405) the claim was set up in the answer. The court said: "The averment in the answer raises the issue, and if found to be true arrests the action, as it would in further proceedings by the sheriff. This defense ought, therefore, to have been disposed of before rendering final judgment, and not left to be contingent upon the action of the sheriff."

*Corpening v. Kincad*, 82 N. C. 202 (not cited), is directly in point on our side. The first head-note is as follows: "Where land sued for has been adjudged in a previous suit to be subject to a specific lien before the adoption of the constitution of 1868, and to be sold, such judgment is one *in rem* directly affecting the land itself, and a party to the suit cannot, in a subsequent action by the purchaser to recover the land, collaterally attack the judgment and claim the *res* as a homestead exemption."

In *Wood v. Timmermon*, (S. C.), 7 S. E. Rep. 74, upon bill filed to set aside conveyance to wife, the husband, *among other defenses*, claimed a homestead exemption, thus claiming it *before* decree.

In *Ruohs v. Hooke*, (Tenn.), 3 Lea, 302, the homestead right was refused in lower court. The Supreme Court modified the *final decree* so as to allow it therein. If it *could* not have been asserted until *after* decree, the modification should not have been made.

*Boynton v. McNeal*, 31 Gratt. 456, was a creditors' bill. A decree was first rendered annulling a conveyance, and ordering a sale (1871). *This decree, so far as it directed a sale of the property was afterwards set aside.* In 1872, there being no decree of condemnation, the grantor executed his deed of homestead, and filed his petition for homestead. He also filed his answer to the bill, in which he denied the fraud and then averred: "But if the deed should be held to be void, then he claims his homestead in the house and lot and asks the court to protect him in his right." The lower court denied his petition, but the Supreme Court granted it. Here is another instance of claim before judgment of condemnation to sale.

In *Shipe v. Repass*, (Va.), 28 Gratt. 716, the first decree, in December, 1874, merely annulled the deed. After a report, the court allowed the grantor an exemption, and in the decree *condemning the land to sale* allowed the exemption.

In *Hatcher v. Crews*, 83 Va. 371, it does not appear there was more than a decree of annulment merely. This appears also from the main case, *Hatcher v. Crews*, 78 Va. 460. The opinion states no more than that the decree appealed from sets aside as fraudulent and void certain deeds.

*Manseau v. Mueller*, 45 Wis. 430, was a bill to set aside for fraud, as to a creditor, a conveyance by Henry Mueller to his son, Bruno Mueller, 40 acres of his farm, consisting of two tracts, one containing 40 acres and the other 30. After the conveyance, the debtor continued to reside on the 30 acre tract. Bruno married and has always lived with his father. The bill also sought a sale of the land. The decree appealed from, and which was affirmed, annulled the conveyance and directed a sale of the land. So far as relates to the question under discussion the court said: "It is claimed by the learned counsel for the defendants, that ten acres of the land conveyed to Bruno was part and parcel of the homestead of the grantor (who retained but 30 acres of his original farm and homestead) and hence, that the conveyance was valid as to such ten acres, although invalid against creditors of the grantor as to the remainder of the land. Had an execution against the property of the grantor been levied upon the lot before he conveyed it to Bruno,

doubtless he might have selected and held ten acres of it in compact form adjoining his other lot, as part and parcel of his homestead. It is also probable that had Bruno made such selection on the trial of this action in the circuit court, he would be entitled to hold that specific ten acres against his father's creditors. But this homestead claim is made for the first time in this court, and no specific parcel of land has ever been designated as the subject of the claim. Should we reverse this judgment becase an indefinite ten acres was not excepted from its operation, Bruno may never make the selection. If he should not, the same judgment would have to be re-entered. To reverse a judgment on appeal, and remand the cause, not for a new trial, but with directions to the court below, in a given contingency, to render the same judgment over again would be a novel practice. For these reasons, we think this homestead comes too late to be enforced.''

In *Hibbon v. Soyer*, 33 Wis. 319, the court held the grantee, under a general denial of fraud merely, could defeat a suit by a creditor of the grantor to reach the property by showing it was the grantor's homestead. The court said : ''But it is said that this defense that the property was a homestead was new matter, and could not properly come in under the answer which was a general denial merely. We can not see why the defense can not be made. The foundation of the plaintiff's case is, that the conveyance to the defendant, Amelia Soyer, is fraudulent, and that the property should be subjected to the payment of his judgment. This the plaintiff denies, but asks no affirmative relief. The plaintiff's action is defeated when it appears the property was a homestead, and by law exempt from sale on execution.''

In *Turner v. Vaughan*, 33 Ark. 454, the debtor had purchased property in name of wife to defraud his creditors. Upon bill filed, the court convicted him of fraud and *condemned the land to sale*. No homestead claim was asserted prior to the decree by husband or wife. *Before sale*, the debtor claimed homestead by application to the commissioner, appointed to sell under the decree. He then filed bill to assert homestead right. The court, by ENGLISH, C. J., reviewed all the authorities and held :

[First National Bank of Tuscaloosa v. Kennedy.]

1. The decree condemning the whole of the lands was final, and in full force.

2. That the claim should have been set up in the answer prior to the decree of sale, using this language : "If, therefore, appellee had in his answer to appellant's bill, not only denied, as he did, that he procured the lands to be conveyed to his wife to defraud his creditors, but, as a further defense, shown that he had impressed the homestead character upon a part of the lands, and asked the court if it found the conveyance fraudulent and set it aside, to decree him the benefit of the homestead exemption, provided for by the constitution, the court should have so decreed."

3. Calling attention to the fact of difference between merely annulling deed and condemning property to sale, thus he says :    "The court did not merely set aside the fraudulent conveyance, which appellee procured to be made to his wife, and remit the appellant to his remedy by execution upon his judgment at law, [which was in effect the character of the decree or order of sale in *Sears v. Hanks*, 14 Ohio St. Rep. 298, relied on by counsel for appellee] , but it directed the sale under its own decree, and could not under the facts of the case have done otherwise." Citing, *Norris v. Kidd*, 28 Ark. 486 ; *Frits v. Frits*, 32 Ark. 327 ; *Larson v. Reynolds*, 13 Iowa, 579 ; *Haynes v. Meek*, 14 Iowa, 320 ; *Tadlock v. Eccles*, 20 Texas, 783 ; *Lee v. Kingsbury*, 13 Texas, 68 ; *Wright v. Dunning*, 46 Ill. 274 ; Thompson on Homesteads, §§ 715-721 ; *Meller v. Sherry*, 2 Wall. 237.

4. The concluding sentence of the preceding quotation is then explained, noting difference between this case and that of sale of property theretofore belonging to a debtor as follows :  "The title to the lands was never in appellee, Vaughan. He purchased the lands, and procured the vendors to convey them by deed to his wife. The title to the lands was in her, when Turner filed his creditors' bill against husband and wife, and when the decree in that suit was rendered.    Had the decree merely set aside the deeds made to her as fraudulent and remitted Turner to his execution on his judgment against the husband, a sale under the execution would not have carried the title to the purchaser ; hence it was necessary to condemn the lands to be sold under the decree, in order to carry the wife's legal title to the purchaser."

"So we think it (homestead exemption) is lost when there is a bill *in rem* to condemn the homestead land to be sold to satisfy a debt, and the claim is not interposed before decree, and the decree becomes final and passes from under the control of the court rendering it, as in this case." Homestead was denied.

In *Carmack v. Lovett*, 44 Ark. 180, the defendant denied fraud, and the grantor set up his homestead claim, and asked if his deed be held fraudulent he be allowed to retain 160 acres as homestead, including 40 acres upon which he lived. The court said : "He asks in the alternative that if the conveyance be void he be allowed to hold that as his homestead. This he has a right to do. It was held in *Turner v. Vaughan,* that where, in an action by creditors, a deed is held fraudulent, the grantor may nevertheless, *in that action*, claim his homestead in the land. (33 Ark. 454.)"

*Graves v. Graves*, 106 Ind. 118, 5 N. E. Rep. 879, (March 20, 1886), was a proceeding to procure an exemption. The land had been condemned to sale in a proceeding for that purpose against the claimant. It was averred in the answer that the real estate described in the decree was levied upon and sold in accordance with the provisions of the decree. The court (Elliott, J.) said : "This answer is good. The decree of the court declares that the land now claimed as exempt from execution is subject to the lien in favor of the judgment in favor of Victoria Graves, and orders that it be sold, so that the rights to seize and sell the land is expressly adjudicated. We think it very doubtful whether, in any case, a devisee who has received land under the will of a deceased person can successfully claim a right to have it exempted from sale on an execution issued on a judgment rendered in favor of a person to whom the testator was indebted ; but, however this may be, we are quite clear that land can not be claimed as exempt where, as here, there is a decree specifically declaring it to be subject to a lien, and where the decree can only be effectually executed by a sale of the property. This case falls within the principle declared in *State v. Manley*, 15 Ind. 8, where it was said : 'The order for the sale of the property was a final judgment, beyond which the officer was not required to look, and behind which the relator could not go in order to assert his right to claim the

property as exempt from sale.' Speaking of a similar case the court said : 'The judgment against the property is a judgment *in rem*, and is as conclusive as a judgment against the person.'—*Perkins v. Bragg*, 29 Ind. 507. This doctrine is approved in *Bancord v. Parker*, 65 Pa. St. 338. Judgment affirmed."

In *Haas v. Shaw*, 91 Ind. 384, the court said : "It was incumbent on him, if he desired to secure the benefit of the exemption law, that he should interpose, by answer, his claim to such exemption, before final judgment should be rendered in the attachment proceedings. In section 161 of the Civil Code of 1852, in force at the time (§ 918, R. C. 1881) it was provided that the order of attachment should 'require him,' the sheriff, 'to seize and take into possession the property of the defendant in his county not exempt from execution.' If, in any case the defendant claimed that his attached property was 'exempt from execution,' and, therefore, not subject to seizure under an order of attachment, it was absolutely necessary that he should assert such claim before the final judgment in the attachment proceeding, whether the property attached is subject to execution is *res adjudicata*, after judgment in attachment. The judgment against the property is a judgment *in rem*, and is as conclusive as a judgment against the person." *State v. Manley*, 15 Ind. 8 ; *Perkins v. Bragg*, 29 Ind. 507.

In *State v. Manly*, 15 Ind. 8, a defendant in attachment, after an order of sale of attached property for a debt, and *before sale*, claimed his exemption thereof. The court said : "Here the claim to have the property exempted was made after the court had ordered it sold, and we think the officer was justified in refusing to accede to the demand. The order for the sale of the property was a final judgment, *beyond which the officer was not required to look*, and behind which the relator could not go in order to assert his right to claim the property as exempt from sale. If the proper practice be for the officer serving the attachment upon the property demand, to set apart to the debtor such property as may be exempt from execution, then he only returns as attached such as is not thus exempt, and such only is ordered to be sold upon final judgment against the defendant. If, however, such be not the proper practice, and if the officer can not thus be required to determine,

at his peril, whether the defendant is entitled to hold property as exempt, the remedy of the debtor is sufficiently plain. He may set up his claim to hold the property as exempt from sale in the court from which the attachment issues, as a defense to such attachment. If either of the courses be pursued, but final judgment be rendered against the defendant, and the attached property ordered to be sold, we think it too late for the defendant to set up a claim that the property is exempt from sale for his debts."

This ruling was affirmed in *Perkins v. Bragg*, 29 Ind. 507.

*Collins v. Chantland*, 48 Iowa, 241, was a petition in chancery alleging that Alice McNamara instituted action against Maloney for injuries sustained by sale of liquors to her husband ; that Collins was made a party, and lien claimed against his real estate because occupied by Maloney, where liquors were sold ; that judgment was rendered in her favor, declaring lien upon the property. The petition then alleged the property was his homestead, and being ignorant of his rights, he did not set that fact up as a defense. A demurrer to the petition was sustained, the court saying : "The plaintiff Collins was a party to the action wherein judgment was rendered against his property. Any defense he had to the claim for a lien made against her should have been made in that action. Failing to make such a defense he can not resist the enforcement of the judgment upon the ground that the property is exempt from the lien ; the question of the lien is *res adjudicata*. His ignorance of his rights at the time judgment was rendered is no ground for setting it aside. These propositions rest upon elementary principles that may not be stated here."

*Hemenway v. Wood*, 52 Iowa, 21, is directly in point. The defendant Wood had brought a suit for divorce against his wife for adultery. The wife instituted a suit against the husband and one Seaver to obtain title to certain real estate, which she alleged had been purchased with her money, and which the defendant, by fraud, had caused to be conveyed to Seaver. The two actions were consolidated and a decree entered granting divorce to the wife, and alimony upon the cross petition asking that relief. The judgment for alimony was by the decree made a special lien on the land involved in this suit,

to be enforced by special execution on default of payment. Default having been made, the land was sold. In an action by the purchaser the defendant pleaded "Homestead." The court said: "But one question need be determined, namely: 'Did the decree cut off the homestead right of defendant, if he in fact, held said right to the land?' The decree by its express terms made a lien upon the land. The court pronouncing it had jurisdiction of the person of defendant, of the subject matter of the action, and of the property affected by the lien. It must, therefore, be held valid. If it should be considered erroneous, it can not be impeached on that ground in this action. Being valid, it must of necessity cut off the homestead right of the defendant, for that right is inconsistent with the decree. *If the right exists, the decree can not be enforced. As the decree is valid, it must be enforced, for the law would not permit the vain thing of a valid judgment which is incapable of being enforced.* We conclude, therefore, that the decree cut off the homestead right of the defendant. It may be remarked that defendant ought to have set up his homestead in the action for the divorce, in order to protect his right to the land, when the court was asked to declare the judgment thereon. That was the proper proceeding to determine the questions he raised in this case. Having failed to do so, the law will not give him another opportunity to litigate the questions that were settled by that decree."

In foreclosure suit, involving property, which is homestead of a party thereto, the defense that the property is exempt as a homestead, must be set up in that case. *Larson v. Reynolds*, 13 Iowa, 579; *Haynes v. Meek*, 14 Iowa, 320.

In *McFarland v. Goodman*, 6 Biss. 111, cited by majority, the grantor was not a party, but the suit was solely against the grantee. Judge Hopkins, however, said: "If *Gains Munger* and his wife had been parties to that suit, and such a decree had been entered they would have been concluded. But not being parties they are not affected by it. But if they had been joined in that suit they could have set up their homestead claim, and if they had, according to decision in *Drentzer v. Bell et al., supra*, the deed as to the homestead portion would not have been declared void; the title to the homestead portion would have been confirmed in the grantee, and

as between her and the bankrupt and his wife, it was to continue to be their homestead during their natural lives. They, in that case, would have had the full benefit of their right under the statute."

In *Smith v. Kehr*, 2 Dill. 50, homestead interests were protected in final decree and allowed the wife, *the grantee*.

*Bartholemew v. West*, 2 Dill. 290 ; 2 Fed. Cases, p. 963, No. 1071. At a prior term of the court, a decree had been entered in favor of the assignee in bankruptcy, setting aside as fraudulent the conveyance of the property to the wife of the bankrupt, *but reserving all rights of homestead*. Thereafter the assignee applied for an order of sale, and the defendant, *as a bar to the application*, set up his homestead exemption, and the court *refused to grant the order of sale*, because the property was exempt. Judge DILLON said : "I am of opinion that the right to the exemption has not been lost by delay. When the assignee applied for an order to sell the property, it was competent for the husband to resist it, as he did, on the ground that the property was his homestead and exempt as such."

*Cox v. Wilder* was first tried by District Judge TREAT, 6 Fed. Cas., No. 3309. He held in line with Judge COLEMAN's views. On appeal his decree was reversed by Judge DILLON (2 Dill.. 45, 6 Fed. Cas. 584, No. 3308). The bill was filed by the assignee in bankruptcy of one Sauer, to annul a deed made to one Wilder. The latter was made a party and also Sauer and wife, who claimed homestead and dower in the land, respectively. The object of the bill was to have said fraudulent deed adjudged void as to creditors, and the title to the premises vested in the assignee, discharged of both dower and homestead interest. (See statement of facts in Fed. Cases, No. 3309.) Judge TREAT overruled a demurrer to the bill, interposed by Sauer and wife for want of equity. This decree was reversed, Judge DILLON holding that the homestead and dower right should not be divested by the decree which annuls the conveyance. The homestead right was preserved in the decree.

In *Miller v. Sherry*, 2 Wall. 237, there had been a decree setting aside a fraudulent conveyance and condemning the property to sale and it was sold. In an action of ejectment by one claiming under the purchaser, the

debtor set up that he was entitled to a homestead in the
property. The court, by SWAYNE, J., said: "In regard
to the homestead right claimed by plaintiff in error,
there is no difficulty. The decree under which the sale
was made to Bushnell expressly divested the defendant
of all right and interest in the premises. It can not be
collaterally questioned. Until reversed, it is conclusive
upon the parties, and the reversal would not affect a
title acquired under it, while it was in force." The
court does not say the sale, but the *decree* determined
the right of the parties.

The recent case of *Dowell v. Applegate*, 152 U. S. 327,
is a strong case upon the question of the conclusiveness
of a decree of condemnation to sale of land fraudulently
conveyed. In a bill to set aside a fraudulent convey-
ance, and to condemn the land the court said: "The
fraudulent question presented was whether the lands
themselves, fully identified by the pleadings, could be
rightfully sued in satisfaction of Dowell's demand."
And again the court says: "Upon what principle can
it be held that that decree being unmodified and unre-
versed, does not conclude the parties to the suit in which
it was rendered in respect to the liability of the land
described in it for the demand of Dowell as ascertained
and settled by the court? It is said that the deed of
October 8, 1874, under which David Applegate claims
the 40 acres, was not distinctly put in issue by the plead-
ings or determined by the decree. But its validity was
involved in the *larger question presented by the pleadings*,
or to the right of Dowell to subject to his demands the
interest of Jesse Applegate in all the lands referred to—
those covered by donation claim as well as those not
within that claim. The decree directing the sale of all
interest of Jesse Applegate in the 221.55 acres on the
1st of January, 1869, was an adjudication as between
Dowell and defendants, that no claim asserted by either
of them could stand against the right of Dowell to have
those lands sold."

The court in majority opinion says the Alabama cases,
properly considered, do not establish the conclusiveness
of the decree here, and that the claim could not have
been interposed before decree. The array of authorities
referred to, and the practice in this State, show it may
be, and, if a sale is desired, *must* be before sale. We

would be glad for the court to point out wherein, in principle, *Toenes v. Moog*, 78 Ala. 558, and *Stanley v. Ehrman*, 83 Ala. 25, differ from this case.

In the first case, it is held that where execution is levied out of a justice court, the claim must be interposed before order of sale. A lien is procured by the levy of the execution, and the proceeding in the circuit court is but a statutory method of enforcing that lien, with opportunity to be heard in opposition before judgment. The chancery proceeding here was an equitable levy upon property fixing a lien exactly as the execution does. There is opportunity given to be heard before the inchoate lien is fixed by decree. The decree of sale, when made, enforces the lien obtained by the equitable levy. It may go further and cancel a cloud on the title, but it is in principle exactly the same as the order of sale of the circuit court, in the case stated.

How can it be maintained that an order in one case enforcing a lien is a bar to the exemption, while in the other it is not?

Another illustration : Suppose in case of fraudulent conveyance, a creditor does not choose to file a bill at all. He proceeds on his execution. Could not the grantor claim his exemption against the execution? If not, he can never claim it, and to defeat the exemption the creditor would have only to proceed at law ; and not seek a decree of annulment. The fact is, if the majority opinion is correct in holding a grantor may claim a homestead exemption, he may do so whenever the creditor asserts the property is his and seeks to subject it, and he *must* do so before decree of condemnation. Upon the authorities, there can be no doubt upon this proposition.

This reasoning also applies to *Stanley v. Erhman*, 83 Ala. 215. The succeeding Nebraska case is directly in point. The case of *Stubendorf v. Hoffman*, 23 Neb. 360, 36 N. W. Rep. 581, (1888), is very similar to this, and shows there would have been no inconsistency in John S. Kennedy's making the defense he did, and also setting up the homestead claim in the chancery suit. The syllabus of that case, prepared by the court, as it appears in the Northwestern Reporter, is as follows : "Plaintiff's action was in the nature of a creditor's bill, alleging the recovery of his judgment, that it was unsatisfied, and

that the real estate sought to be levied upon was purchased by the judgment debtor, defendant; but that he procured the title to be conveyed to his brother, for the purpose of defrauding his creditors. Defendant answered, admitting that the title was held by his brother, who was in fact the owner of the property, but alleging that he was the head of a family, and that he had occupied the premises as a homestead since long prior to the recovery of judgment by plaintiff; and asking that in case the property should be held by the court as belonging to him, that his homestead rights be protected, the property not being capable of fraudulent alienation or subject to execution. Upon motion of plaintiff, he was compelled to elect upon which defense he would stand. Held error, the defenses not being inconsistent."

There was a finding in favor of plaintiffs. Referring to the ruling of the lower court, requiring the defendant to elect, the Supreme Court, by REESE, C. J., uses this language, so applicable here: "It is the *unanimous* opinion of the members of the court that in making this order the district court erred. The prayer of the answer, or rather what we suppose was intended as a part of the prayer, is, that, in case the court finds from the testimony that the premises in question should, in equity or law, be held and considered as the property of defendant, Leonhart Hoffman, then that it be held to be exempt as a homestead, and not capable of fraudulent alienation, or subject to execution. The date of the accruing of the indebtedness is not given by the petition. It is alleged in the answer that from long prior to the rendition of the judgment, and up to the time of the commencement of this suit, defendant was the head of a family, and resided upon the property. It does not appear by the pleadings whether the indebtedness was contracted prior to the occupancy of the property or not. If not, whatever interest or title defendant had in the property would be exempt to him under a homestead right. This right may be based upon either a legal or equitable interest (*Searsy v. Hanks*, 14 Ohio 298), and therefore it was competent for defendant, notwithstanding the admitted legal title in his brother, to assert his homestead right to the property; and he had the right to present that defense in connection with his effort to protect whatever rights Peter might have had in the

premises. The judgment of the district court is reversed, and the cause remanded for further proceedings according to law."

In *Brownell v. Stoddard*, (1894), 42 Neb. 177, the court re-affirmed *Rector v. Rotton*, 3 Neb. 171, which was a foreclosure case, and while waiving direct question here involved said: "But in this case, both the Stoddards were defendants. If the property was a homestead, that fact was a good defense to the charge of alienation to the extent of the homestead exemption. The issue might have been presented and determined."

It seems to me that both argument and authority are against my associates.