## TURNER v. VAUGHAN.

1.  DECREE: *Final at Expiration of term.*

    After the expiration of the term at which a decree is rendered, the Court rendering it cannot set it aside or modify it except in the manner and for the causes specified in Sec. 359, 3602 and 4692 Gantt's Dig., or by bill of review under the Chancery practice.

2.  HOMESTEAD: *Not lost by fraudulent conveyance if claimed in the suit to set aside the conveyance.*

    It seems from the current of adjudications that a conveyance of land set aside for fraud at the suit of creditors, does not stop the grantor from claiming a homestead in the premises conveyed, but he must assert his claim in that suit or he will be afterward barred.

3.  CHANCERY PRACTICE. *Decree vacating fraudulent conveyance.*

    When a debtor purchases land and has it conveyed to another to avoid his debts, a decree in behalf of creditors vacating the conveyance, should direct a sale of the land by a commissioner of the court. and not remit them to their execution at law.

APPEAL from *White* Circuit Court in Chancery.

Hon. J. N. CYPERT, Circuit Judge.

*J. M. Moore* for appellant.

*Coody,* contra.

ENGLISH, C. J. :

This was a bill to enjoin a Commissioner in Chancery from selling lands, claimed as a homestead, under a decree rendered upon a creditor's bill condemning the lands to be sold by the commissioner.

The material facts disclosed in the transcript of the record before us are as follows :

On the 25th of May, 1871, E. D. L. Atkins, being indebted to Blakely D. Turner, drew a draft in his favor upon John W. Vaughan, who was indebted to Atkins, for $364.27, payable 1st November 1871, which was accepted by Vaughan.

On the 3d of February, 1873, Turner recovered judgment against Vaughan before a Justice of the Peace of White County for $347, being for amount due upon the draft after allowing credits, etc.

On the 18th of February, 1873, Turner caused a *fi. fa* to to be issued upon the judgment ; Vaughan scheduled his personal property, and the constable returned upon the execution *nulla bona* etc.

Turner then filed a transcript of the judgment, execution and return, in the office of the clerk of the Circuit Court of White County, and on the 10th March, 1873, caused an execution to be issued thereon, which was returned by the sheriff, no property found, and wholly unsatisfied.

On the 17th of November, 1873, Turner filed a creditor's bill on the Chancery side of the Circuit Court of White county against Vaughan and his wife Amanda, alleging in detail the facts above stated, and further averring, in substance :—

That on the 24th of August, 1871, Vaughan purchased of A. K. Lewis and wife the N. E. 1-4 sec. 14, and the S. W. 1-4 of the N. W. 1-4 of sec. 13, T. 10 N. R. 8 W.; and on the 10th of January, 1873, he purchased of Hugh B. Chandler and wife the S. W. 1-4 of the N. E. 1-4 of sec. 34, same

township and range, situate in White county. That he purchased the said lands with his own means, but to avoid the payment of said debt and other debts owed by him, he fraudulently caused them to be conveyed by the vendors to his wife, Amanda. That at the time of the purchase of said lands, said Amanda had no separate means or estate with which to purchase or pay for them, and that Vaughan purposely caused them to be conveyed by the vendors to his wife to cheat, defraud, hinder or delay his creditors, and particularly Turner, in the collection of their debts against him.

Prayer that said deeds (which were made exhibits) be declared fraudulent, and said lands held to be the property of Vaughan, and decreed to be sold and the proceeds applied to payment of said judgment, etc.

Vaughan and wife answered the bill, admitting to be true its allegations relating to Turner's debt, judgment, executions, etc.

Vaughan admitted that he purchased the lands of Lewis with his own means as alleged in the bill, and had the deed made to his wife, but denied that he caused the deed to be made to her to avoid the payment of his debts or to defraud his creditors, and averred that he caused the deed to be made to her in good faith, and with a view to secure a home for his family and that it was so agreed and understood at the time.

He also admitted that he purchased of Chandler the other tract described in the bill, and paid for the same with his own means, and caused the deed to be made in the name of his wife, but denied that it was with fraudulent intent or purpose to hinder or delay his creditors.

The cause was heard on the pleadings and evidence at the January term, 1876, and the court found that Vaughan purchased the lands described in the bill with his own means, and caused the deeds to be made to his wife to cheat, defraud,

hinder and delay Turner in the collection of his debt, and de-creed that unless Turner's judgment, interests, costs, etc., should be paid by the 1st of March following, the land should be sold to satisfy the same, and appointed the clerk of the court a commissioner to sell the lands under the decree.

On the 21st of June, 1876, Vaughan filed the bill in this suit, in the same court against Turner and A. P. Sanders, the commissioner appointed to sell the lands under the above decree.

The bill alleges that complainant accepted the draft drawn by Atkins upon him in favor of Turner on the 25th of May, 1871, that Turner obtained judgment against him on the draft 3d February, 1873, before a Justice of the Peace, that execu-tion was issued and returned *nulla bona*; a transcript filed in the office of the clerk of the Circuit Court, and execution issued thereon 10th March, 1873, and returned unsatisfied without levy.

That prior to the acceptance of the draft, complainant bought of A. K. Lewis, and paid for the N. E. 1-4 of sec. 14, and the S. W. 1-4 of the N. W. of section 13, T. 10 N. R. 8 W., 200 acres, which at the instance of complainant was, on the 27th of August, 1871, conveyed to his wife Amanda, by deed duly acknowledged and recorded. That he purchased the lands for a home for himself, his wife and children, and to that end he had the deed made in the name of his wife. That since the purchase, in 1871, he and his family had resided, and still resided upon the lands, etc. That the same was his home-stead, and he being a resident of the State, and the head of a family, claimed that he was entitled to 160 acres of said lands upon which were his residence and improvements as his home-stead, to-wit: The S. W. 1-4 of the N. W. 1-4 of sec. 13, and the S. 1-2 of the N. E. 1-4 and the N. W. 1-4 of the N. E. 1-4 of sec. 14, T. 10, N. R. 8 W., free from sale under

execution or other process, or the lien of any judgment or decree of any court, the same not exceeding in value the sum of $2,500.

Complainant then gives the history of Turner's suit against him and wife, and the decree therein as we have stated above, and makes a transcript of the decree an exhibit.

Then alleges that having failed to pay the debt, etc., at the time fixed in the decree, the commissioner had advertised the lands claimed by him as a homestead, with the other land condemned by the decree, to be sold on the 24th of June, 1876.

That he had applied to said commissioner, claiming the above described lands as his homestead, and asking that the sale be suspended and superseded, which he refused. That if the sale should be allowed, it would be a cloud upon his title, etc.

Prayer for restraining order as to the lands claimed as a homestead, that said decree be reviewed and modified, and that upon the final hearing, the injunction be made perpetual.

On the presentation of the bill a temporary injunction was granted.

Turner answered the bill at the July term, 1876.

He admits the allegations of the bill relating to his judgment against Vaughan, and the suit of himself against Vaughan and wife, and the decree therein rendered, and makes a transcript of the pleading in that suit an exhibit to his answer. And avers that in that suit neither Vaughan nor his wife claimed or pretended to claim any homestead right in said lands, but rested their defense entirely upon other grounds,— added a demurrer to the bill, and prayed that the temporary injunction be dissolved.

The cause was submitted on the pleadings and exhibits, and the court announced that it would dissolve the injunction and dismiss the bill; whereupon complainant's solicitor moved the

court to suspend decree until he could consider what further steps he would take in the cause, which was granted.

On the same day of the term, the complainant filed a supplement to his bill, reciting the previous steps in the cause, and alleging that after the announcement by the court, he had filed in the office of the clerk of the Circuit Court a schedule of the lands claimed by him as a homestead, etc., which was exhibited, and asked the clerk for a supersedeas, which was refused.

Turner moved to strike out the supplement, which the court refused, and he entered a demurrer thereto, which with the whole case was submitted, and the court overruled the demurrer, and rendered a decree enjoining the commissioner from selling the lands under the original decree, claimed and scheduled by complainant as a homestead, so long as he should continue to use and occupy them as such.

From this decree Turner appealed to this court.

I. The decree condemning the whole of the lands to be sold by a commissioner to satisfy Turner's judgment, was rendered by the court below on Turner's bill against Vaughan and wife, at the January term, 1876. The decree appealed from, enjoining the commissioner from selling the lands claimed by Vaughan as a homestead, was rendered upon this bill at the July term following. After the expiration of a term at which a decree is rendered, the court rendering the decree has no power to set it aside or modify it, except upon application under the statute, and for some cause therein specified, (*Gantt's Dig.* Secs. 359, 3602, 4692) or by bill of review under the Chancery practice. *Jacks* v. *Adair*, M. S.

The bill now before us does not make a case for setting aside or modifying the decree condemning the lands to be sold under either practice. *Ib.*

II. Counsel for appellant submits that if appellee had set

up his homestead claim in answer to appellant's bill it would have been unavailing. That no exemption can be allowed out of property which has been conveyed with intent to hinder, delay or defraud creditors. That the transfer is valid against the debtor, and in attempting to place his property beyond the reach of his creditors, he places his exemptions beyond his own reach.

*In re Graham, 2 Bissell 449.* Graham sold personal property to Hanton, to defraud his creditors, and was afterwards adjudged a bankrupt and the sale set aside, and he claimed the property as exempt, under a statute of Wisconsin. The court said: " They had no doubt conspired together to place the possession and apparent title in Horton, to defraud Graham's creditors, and were in the execution of that scheme when they were arrested by the proceedings of this court. And if the bankrupt has by his fraudulent acts deprived himself of the benefit of the exemption laws, it is a just retribution upon him. A debtor not unfrequently cheats himself in trying to cheat his creditors, and his bankruptcy furnishes a striking example of such case. In his anxiety to place his property beyond the reach of his creditors, he places his exemptions beyond his own reach."

It seems, however, from the current of adjudications, that a conveyance of lands set aside for fraud, at the suit of creditors, does not stop the grantor from claiming a homestead in the premises thus conveyed. Such a conveyance does not constitute an abandonment of the homestead such as opens it to creditors. *Thompson on Homestead, sec. 408, etc.*, and cases cited.

If, therefore, appellee had, in his answer to appellant's bill, not only denied, as he did, that he procured the lands to be conveyed to his wife to defraud his creditors, but, as a further defense, shown that he had impressed the homestead character

upon a part of the lands, and asked the court if it found the canveyance fraudulent and set it aside, to decree to him the benefit of the homestead exemption provided for by the Constitution, the court should have so decreed.

III. But having neglected to make such defense, and the court having, by its decree, condemned the whole of the lands to be sold by a commissioner in satisfaction of appellant's judgment, had appellee the right, after the decree, to schedule a part of the lands as a homestead, under the statute providing for the scheduling of exempted property, and then upon his bill for that purpose, procure a decree enjoining the commissioner from selling that part of the lands claimed by him as a homestead?

In *Norris et al* v. *Kidd*, 28 Ark., 486, the homestead claimant permitted the lands to be sold under an execution issued upon a judgment recovered against him, without scheduling the property, as required by the statute ( Gantt's Dig. sec. 263 etc.,) and afterwards the homestead claim was set up as a defense to an action of ejectment brought by the purchaser, and it was held to be too late.

In *Frits* v. *Frits*, 32 Ark,, 327, the homestead was mortgaged, and to a bill to foreclose the mortgage, the answer set up the homestead claim (under the constitution of 1868) as a defense, and it was held that the defense could be successfully interposed by answer without scheduling the homestead under the statute.

It has been held that where a mortgage has been made on homestead land, and a bill brought to foreclose, the mortgagor must plead the homestead exemption in defense, and if he neglects to do so, or pleads it, and the defense is overruled, and there is no appeal from the decree, he is barred from afterwards asserting the homestead claim against one who purchases under the decree of foreclosure. *Larson* v. *Reynolds et al*. 13

Iowa, 57; *Haynes et al* v. *Meek*, 14 Ib., 320; *Lee et seq* v. *Kingsbury*, 13 Texas, 68: *Tadlock* v. *Eccles*, 20 Ib., 783.

In *Haynes et al* v. *Meek, sup.*, the court said : If the homestead right ever existed, it was lost to the claimant by his failing to set it up in the foreclosure proceeding, in other words, he has had his day in court upon this alleged homestead right.

In Illinois the husband cannot alone release the homestead right, but he must be joined by the wife, hence it has been held that a foreclosure against the husband does not bar the wife, and she may interpose the homestead claim after decree. But if a writ is brought against her after she has become discourt involving the homestead right, and she neglects to plead the homestead right, she is precluded by the decree. *Wright et al* v. *Dunning*, 46 Ill., 274. *Thompson on Homesteads*, sec, 715–721.

By our laws the homestead right of the wife does not attach until the death of the husband—she succeeds him in the homestead right, if he has it at his death. He may bar any homestead claim by her, by a conveyance in which she does not join, though he cannot thus bar her right to dower which attaches at the marriage. *Johnson et al* v. *Turner, ad.*, 29 Ark., 281.

So ''Where a judgment creditor brings a bill in equity to set aside a conveyance of certain realty of the debtor, as having been made in fraud of his rights, if the debtor would set up a right of homestead in the premises, he must do it in that suit. If a decree has been entered divesting him of all right and interest in the premises, and directing them to be sold, and they have been so sold, and the purchaser brings ejectment, the debtor cannot, in this action, set up a right of homestead in the premises, he must do it in that suit. The decree in equity cannot be thus collaterally questioned. So, if the bill is taken for confessed, a final decree entered, and the premises sold thereunder, and the defendant refuses possession, claiming

to hold under the homestead law, he cannot assert this right in opposition to the granting of a writ of assistance." *Thompson on Homesteads*, sec. 726.

*Miller* v. *Sherry*, 2 Wallace, 237, was a creditor's bill, like Turner's, and the property claimed as a homestead was sold under the decree, the debtor having failed to plead the homestead right, in the suit to set aside a fraudulent conveyance. The court, by JUSTICE SWAYNE, said : " In regard to the homestead right, claimed by plaintiff in error, there is no difficulty. The decree under which the sale was made divested the defendant of all right and interest in the premises. It cannot be collaterally questioned. Until reversed it is conclusive upon the parties," etc.

In this case the lands claimed as a homestead had not been sold when the bill for injunction was brought, but the object of the bill was to prevent the sale by the commissioner under the decree condemning them to be sold.

The lands were as effectually condemned to be sold by the decree as mortgaged premises are upon a decree of foreclosure.

The court did not merely set aside the fraudulent conveyances which appellee procured to be made to his wife, and remit appellant to his remedy by execution upon his judgment at law, (which was in effect the character of the decree, or order of sale in *Sears et al* v. *Hanks et al.*, 14 Ohio St. R., 298, relied on by counsel for appellee) but it directed the sale under its own decree, and could not upon the facts of the case, have done otherwise.

The title to the lands was never in appellee, Vaughan. He purchased the lands, and procured the vendors to convey them by deeds to his wife. The title to the lands was in her when Turner filed his creditor's bill against husband and wife, and when the decree in that suit was rendered. Had the decree merely set aside the deeds made to her as fraudulent, and re-

mitted Turner to his execution on his judgment against the husband, a sale under the execution would not have carried title to the purchaser; hence it was necessary to condemn the lands to be sold under the decree, in order to carry the wife's legal title to the purchaser.

The Constitution of 1868, which was in force when the debt, upon which Turner's judgment was obtained, was contracted, provides that the homestead shall be exempted from sale on execution, or any other final process from any court. *Art. XII, sec. 3; Constitution of 1874, Art. IX, sec. 9.* Yet it was held in *Norris et al v. Kidd, sup.*, that the homestead claim was lost if the property was not scheduled before sale under execution. So we think it is lost where there is a bill in *rem* to condemn the homestead land to be sold to satisfy a debt, and the claim is not interposed before decree, and the decree becomes final, and passes from under the control of the court rendering it, as in this case.

If it be said that it is a hardship for a man to lose his homestead exemption because he failed to assert it at some particular time, or in some special mode, or in some particular proceedings; it may be replied, that such is the law in relation to any defense which a man has an opportunity to make, and fails to interpose it. If sued on a paid, or barred demand, and he fails to plead payment or limitation, he is precluded by the judgment, in the absence of fraud, etc. *Conway* v. *Ellis*, 17 Ark., 365.

The decree of the court below must be reversed, and a decree entered here dismissing appellee's bill for injunction.