## WILKS *v.* VAUGHAN.

Opinion delivered December 3, 1904.

1. CONTRIBUTION—WHEN APPROPRIATE REMEDY.—Where plaintiffs and defendant were liable, either as joint debtors or as cosureties, to discharge a judgment, the former, after paying it off, are entitled in either case to contribution from the latter. (Page 178.)

2. SUBROGATION—AMONG COSURETIES.—If two cosureties pay the claim of a creditor against their principal, they are entitled to be subrogated to the rights of such creditor to set aside fraudulent conveyances executed by a third cosurety. (Page 179.)

3. VOLUNTARY CONVEYANCES—PRESUMPTION.—Conveyances made to members of the household and to near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; when voluntary, they are *prima facie* fraudulent; and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors. (Page 179.)

4. HOMESTEAD—EFFECT OF TEMPORARY ABSENCE.—A debtor, entitled to claim land as a homestead, does not lose the right by temporary absence for purposes of trade where there was never an intention to change his residence, but a fixed and unqualified intention to preserve it. (Page 179.)

5. SAME—INCREASE.—A debtor, entitled to a homestead, may increase such homestead, while not residing upon it, to the maximum area, and hold it as against a judgment rendered against him before he returned to it. (Page 180.)

Appeal from Madison Chancery Court.

JOHN N. TILLMAN, Judge.

Affirmed.

#### STATEMENT BY THE COURT.

W. J. Sanders, a brother-in-law of appellee G. W. Vaughan and son-in-law of appellee A. Sanders, was engaged in running a grist mill, blacksmith shop and mercantile business in Madison County about 1895 or 1896. He secured his father-in-law and brother-in-law and appellant Wilks to become his sureties upon

a note. He suffered a heavy loss by fire, and, being unable to meet his indebtedness, turned over to his sureties his property. They took up his note with their own, and ran the grist mill under the style of Sanders, Wilks & Co. Wilks was entitled to an equal voice in the management and disposal of the property, and whether he exercised it or not was discretionary with him. The evidence shows that, while not assuming a controlling part, he did exercise acts of control and authority continually, signed checks and participated freely in the running of the business.

The indebtedness assumed for W. J. Sanders and an additional indebtedness to the Farmers & Merchants Bank of Springdale passed into judgment against them for the sum of $7,054.85 on the 10th of September, 1898, and were paid by G. W. Vaughan and A. Sanders on the 7th of September, 1899, then amounting to $7,821.

On the 30th of June, 1898, Wilks conveyed to his brother-in-law, Lane, two tracts of land known as the "Samuel Lane place," containing 58¼ acres, and the other known as the "Zimri Vaughan place," containing 75 acres, and on the 5th of July, 1898, Lane conveyed these tracts to Wilks' wife. On the 8th of September, 1898, Wilks conveyed to his wife's nephew, James Bettis, a tract of 80 acres of land for an expressed consideration of $500, and on the 3d of December, 1898, Bettis conveyed it to Moore for an expressed consideration of $300, part of which, it subsequently developed, was for a debt of Wilks to Moore.

On the 14th of July, 1898, Wilks exchanged with Southerland a store, storehouse and dwelling at Whitener for residence property in Hindsville, taking Southerland's notes for the difference in value. Part of these notes were transferred to Lane, a brother-in-law, and one for $300 was transferred to Mrs. Wilks, and she subsequently transferred it to Emily Kenyon. The residence property acquired by Wilks of Southerland was conveyed to Wilks' wife, and she conveyed it to his mother. In August, 1893, Wilks purchased of his sister-in-law, Emily Kenyon, a tract of 69 acres, a part of the original Samuel Lane place. It adjoined the other two tracts (the Samuel Lane place and the Zimri Vaughan place), and became part of the Wilks farm, which then embraced the three tracts, and contained 202 acres and a fraction over. This farm, as then constituted, was of irregular shape, but compact and all in one body.

It is not clear whether the purchase money was all paid to Mrs. Kenyon or not. It seems to have been deeded to Wilks, but the deed not recorded. It was claimed that the purchase price, or part thereof, was unpaid, and Mrs. Wilks gave Mrs. Kenyon the $300 note of Southerland, and Mrs. Kenyon then deeded the land to Mrs. Wilks on the 8th of July, 1898.

The Samuel Lane 58 acres were conveyed to Wilks and wife jointly by Samuel Lane, the father of Mrs. Wilks, in 1887. Wilks bought the Zimri Vaughan place of 75 acres adjoining this tract in 1890. He occupied these two tracts, containing 133 acres, as his home, and farmed thereon from the time of the acquisition of each until about 1891. He then went into business at Hindsville, and later at Whitener, and owned a residence at Whitener, and lived there several years, attending to his business. He controlled the farm all the time, purchased the Emily Kenyon tract after he moved away, but made it part of the farm. He claimed that he always intended returning to his place, and that his absence was temporary for business purposes.

After paying the judgment to the bank, Vaughan and Sanders brought this suit against Wilks for one-third of the amount thereof, and to set aside the various conveyances aforementioned, and to subject the Southerland note and the real estate conveyed to the payment of the judgment. It is apparent that, after these various transfers, Wilks had no other property remaining in his own name upon which execution could be levied.

Wilks denied that he was liable to contribution on the judgment; alleged that he was surety for W. J. Sanders at the request of Vaughan and A. Sanders; that property more than sufficient to pay the W. J. Sanders debt was turned over to them, and they still had it or the proceeds thereof sufficient to satisfy the judgment; and denied all allegations of fraud in the various transfers.

The chancellor rendered judgment for one-third of the bank judgment against Wilks, set aside all the conveyances except as to the Samuel Lane and Zimri Vaughan tract, and ordered the land sold to satisfy the decree, and rendered judgment against Southerland for the $300 note, and directed Mrs. Kenyon to turn it over to the clerk of the court, by him to be delivered to Southerland upon his paying the judgment against him.

All parties to the various transfers were parties to the suit. Wilks appealed from all of the decree setting aside his homestead in the two tracts aforesaid, and appealed from the refusal to set apart the selected part of the Kenyon tract going to make up 160 acres. The evidence showed the entire tract of 202 acres was less in value than $2,500. Vaughan and Sanders appealed from so much of the decree as refused to set aside the conveyances as to the 133 acres set apart as a homestead.

*J. D. Walker* and *J. Wythe Walker,* for appellants.

Appellees' cause of action failed because they did not pursue their course of action against Sanders. 60 Ark. 489; 62 Ia. 155; 21 Ala. 779; 30 Barb. 403; 6 B. Monroe, 236. A surety who misapplies funds cannot call upon his cosurety. 71 Ga. 54; 11 B. Monroe, 399. If one becomes a cosurety at the request of another, he is not liable for contribution. 37 N. H. 567; 17 Mass. 107; 6 Gill & J. 250; 4 Wend. 432; 2 Dana, 296; 33 Ind. 332. A surety is not entitled to claim contribution of a surety. 11 Mo. 526; 21 Miss. 526; 15 Ohio St. 200; 28 O. St. 41; 46 Vt. 198; 82 Ill. 511; 73 N. Y. 531; 1 L. R. A. 313. Fraud must be proved and expressly found. 11 Ark. 378; 31 Ark. 556, 225; Bump, Fraud, 605; Wait, Fr. Conv. § 283; 108 U. S. 66. A deed to a wife from a husband for a valuable consideration is valid. 111 U. S. 722.

*Geo. B. Pugh & R. E. Wiley,* for appellants.

Between partners, contribution is never allowed until there has been an accounting. 2 Lind. Part. 567; 2 Bates, Part. § § 849-859; 6 Ark. 192; 23 Ark. 333; 58 Ark. 580. Contribution will not be allowed when inequitable. 62 A. Dec. 747; 59 A. Dec. 631. Insolvency must be alleged and proved. 34 Ark. 73. Fraud is never presumed, and circumstances of suspicion leading to no certain results are not sufficient. 38 Ark. 419; 9 Ark. 482; 18 Ark. 124; 22 Ark. 184; 20 Ark. 216; 37 Ark. 145; 45 Ark. 492; 11 Ark. 378; 31 Ark. 554. If the conveyances complained of are set aside, Wilks is entitled to his homestead. 64 Ark. 7; 22 Ark. 400; 15 Am. & Eng. Enc. Law (2d Ed.), 607.

*L. W. Gregg* and *J. V. Walker,* for appellees.

Plaintiffs are entitled to contribution. 34 Ark. 580; 1 Brandt, Sur. § 254; Sheldon, Subro. § 140; Pom. Eq. Jur. 1418. The lien held by the bank inures to the benefit of appellees. 2 Brandt, Sur. § 309; 63 Ark. 299; 51 Ark. 84. Wilks did not establish a homestead, and was not entitled to the exemption. 57 Ark. 180; 60 Ark. 262. Fraud in the conveyance of the land was proved. 46 Ark. 242; 94 U. S. 584; 24 Ark. 410; 45 N. E. 680; 12 N. E. 720. The parties stood upon an equality as signers of the notes. 23 Ark. 264; 56 Ark. 418; 95 Mo. 379; 96 Ala. 172; Wait, Fr. Convey. § 390; Bump, Fr. Con. 188. Wilks was guilty of fraud, and cannot seek relief in equity. Pom. Eq. Jur. § 397; 2 Beach, Law Cont. § 618; 1 Wall. 518; 44 Am. Dec. 718. There was a complete accounting between the parties. 6 Watts, 238.

Hill, C. J., (after stating the facts.) 1. The facts fairly established that Vaughan, Sanders and Wilks were jointly in control of the property turned over to them by W. J. Sanders, that Wilks joined in and approved of the conveyances disposing of it, and that in the management of the mill Wilks was an active participant. The positive testimony of Vaughan and A. Sanders that every dollar received from the W. J. Sanders property and business went to pay the W. J. Sanders debt, and not a cent to themselves, together with the showing they made of the accounts between the parties, was sufficient to overcome the vague and uncertain testimony introduced by Wilks tending to prove that they had used the proceeds of this property for their own benefit. This state of facts lifts the case entirely from the principle of the case of *Euclid Avenue National Bank* v. *Judkins,* 66 Ark. 486, which is invoked in behalf of Wilks. It is insisted that the relation of sureties to W. J. Sanders still existed, notwithstanding the direct note to the bank. It can make no difference to Wilks which way it is treated. If treated as a joint debtor, this doctrine is applicable: "It is true that for the purpose of contribution each joint debtor is regarded as the principal debtor for that part of the debt which he ought to pay, and as surety for his co-debtor as to that part of the debt which ought to be discharged by him." *McGee* v. *Russell,* 49 Ark. 105. If treated

as sureties for W. J. Sanders, then his condition is not bettered, for section 7314 of Sandels & Hill's Digest would be directly applicable. The judgment for contribution was right.

2. Having paid the judgment to the bank, appellees became subrogated to all its rights against Wilks. "The right of subrogation does not arise from contract, though it may be defeated by it. It is the machinery adopted by courts of justice to enforce fair dealings towards those secondarily bound for a debt, not only as against principals and creditors, but amongst cosureties themselves. The latter must share with each other every plank in the shipwreck." *Fishback* v. *Weaver,* 34 Ark. 569.

Vaughan and Anderson Sanders having become subrogated to the rights of the bank, then the conveyances of Wilks are to be tested as if the bank was the plaintiff in this action. The conveyances were all made after the debt was incurred to the bank, and only a short time before judgment thereon—some a few days, and the farthest less than three months. Wilks was practically denuded of all his property after they were made. Were they fraudulent as to the bank, and through it as to these appellees? It must be said, in fairness to Wilks, that plausible, and, in some instances, almost convincing, explanations of these transfers are made. It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent, and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors. *Baldwin* v. *Johnston,* 8 Ark. 260; *Reeves* v. *Sherwood,* 45 Ark. 520; *Hershy* v. *Latham,* 46 Ark. 542; *Driggs* v. *Norwood,* 50 Ark. 42; *Campbell* v. *Jones,* 52 Ark. 492.

Certainly, these conveyances, made so shortly before this judgment, divesting the debtor of all tangible assets, to near relatives, were sufficient to cast the burden of proving the good faith upon the parties to them. The chancellor has held them fraudulent, and this court cannot pronounce that finding contrary to the preponderance of the evidence; in fact, it is in accordance with it.

3. The chancellor found the conveyance as to the Zimri Vaughan and Samuel Lane places, 133 acres, not fraudulent because a homestead. If this was a homestead, under the rule of

*Campbell* v. *Jones*, 52 Ark. 493, the conveyances could not be fraudulent. The evidence brings the case fairly within the rule of *Robinson* v. *Swearingen*, 55 Ark. 55, towit: "A debtor, entitled to claim a farm as exempt, does not lose the right by a temporary absence for purposes of trade, where there was never an intention to change his residence, but a fixed and unqualified intention to preserve it." The chancellor was right in holding that the homestead had not been abandoned.

4. The remaining question is: Was Wilks entitled to increase his homestead, while not residing upon it, to the maximum area, and to hold it against this judgment rendered before he returned to it?

The Supreme Court of Texas has construed the homestead exemption to permit the debtor to purchase adjoining land bringing the homestead to the maximum area without subjecting the newly-acquired land to the lien of existing judgments. *Campbell* v. *Macmanus*, 32 Tex. 442; *Campbell* v. *Macmanus*, 37 Tex. 267. Allowing the additional land to fall into the homestead impressed with the homestead exemption against existing judgment liens is going farther in liberal construction than merely allowing the additional land, up to the maximum area, to fall into the homestead, and become impressed with the homestead character, whether the debtor is actually residing on it or temporarily absent. The law recognizes no difference between the homestead actually occupied and the homestead not occupied personally by the debtor during absence for business or other reasons calling for a temporary absence—be it long or short—with intention of returning. The only statute touching it is section 3714, Sandels & Hill's Digest, which provides that where the homestead consists of more than the maximum area, and the debtor is not residing upon it, he must select his homestead from the land levied upon before sale. In *Tillar* v. *Bass*, 57 Ark. 179, this court said this statute did not undertake to say what should constitute a homestead.

When a debtor conveys land, all or part of which is his homestead, and the conveyance is attacked as 'fraudulent, he may in that action defend against the alleged fraudulency of the conveyance, and in the alternative claim and select his homestead, to guard against the event of it being adjudged a fraudulent conveyance and set aside. *Turner* v. *Vaughan*, 33 Ark. 454; *Carmack* v. *Lovett*, 44 Ark. 180.

This was, in substance, Wilks' defense; and his homestead right was allowed to prevail against the conveyances of it adjudged fraudulent except as to the increased part thereof. He was entitled to make this selection, and have it set apart, as there was nothing to show that it offended against the rule forbidding capricious and unreasonable selection, as declared in *Sparks* v. *Day,* 61 Ark. 571.

The decree is reversed, in so far as it subjected the 26 acres of the Emily Kenyon tract selected as part of the homestead to the judgment herein rendered, and the case is remanded, with instructions to enter a decree in accordance with this opinion. In all other respects the decree is affirmed.

McCULLOCH, J., (dissenting.) I dissent from the opinion of the majority of the court in holding that Mrs. Nancy Wilks was entitled to hold 25½ acres of land as part of her husband's homestead, in addition to the 133½ acres decreed by the chancellor. The whole tract had been conveyed by the debtor, Thomas Wilks, to his wife in an attempt to place it beyond the reach of his creditors. The 133½-acre tract had formerly been occupied as the homestead, and had never been abandoned, though the owner had not resided thereon for many years. During his absence from the homestead, which, though long continued, is shown to have been only temporary, and with intention to return, he acquired title to a contiguous tract of 69 acres, which was also conveyed to his wife with the intent to defraud his creditors. With his deposition in this cause, Wilks files a plat of the 133½ acres embracing his original homestead, and 25½ acres of the subsequent 69-acre purchase, claiming it as his homestead, and the majority of this court hold that the claim should be sustained.

The right of a grantee in a fraudulent conveyance of the homestead to hold against creditors proceeds upon the theory that, the land being exempt, the creditors have no cause for complaint. *Turner* v. *Vaughan,* 33 Ark. 454; *Bogan* v. *Cleveland,* 52 Ark. 101; *Stanley* v. *Snyder,* 43 Ark. 429; *Pipkin* v. *Williams,* 57 Ark. 242.

It is sustained, not because of any right in the debtor at the time it is asserted, for he has parted with his title by the fraudulent conveyance, but for the sole reason that at the time of the conveyance the land has been fully impressed with the homestead

character, so as to be exempt. In other words, the rights of the parties are fixed with reference entirely to the conditions which existed at the time of the alleged fraudulent conveyance; and if the land be exempt at that time, no degree of fraud will impair the validity of the conveyance. In this case, the 25½ acres claimed as a part of the homestead were never impressed in any manner with the homestead character. The purchase of it as property contiguous to a homestead not then resided upon did not serve that purpose. Whilst the intention to return to a homestead from which the owner is temporarily absent prevents the working of an abandonment of the homestead claim, it does not amount to the impressment of the homestead character upon contiguous land acquired since the removal from the homestead and never actually occupied. The constructive continuity of possession of the homestead is a fiction of the law which does not draw to it .such occupancy of subsequently acquired contiguous lands as to amount to an impressment as a part of the homestead. An intention to occupy lands as a homestead is not sufficient to impress it with that character. It must have been so impressed at the time that specific rights and liens of creditors attached. *Williams* v. *Dorris*, 31 Ark. 466; *Patrick* v. *Baxter*, 42 Ark. 175; *Tillar* v. *Bass*, 57 Ark. 179.

The act of 1887, p. 90 (Sand. & H. Dig. § 3714), provides that when "the debtor does not reside on his homestead, and is the owner of more land than he is entitled to hold as a homestead, he or his wife, as the case may be, shall select the same before sale." The sale mentioned in the statute has reference particularly to a sale under execution against the debtor when he has not parted with the title to the homestead, but it illustrates the purpose of our law to require the debtor in apt time to make a selection of the homestead boundaries, where he owns more land than allowed as exempt, and he does not reside thereon. Applying this reasoning to the facts of the case, the court looking to the time when the alleged fraudulent conveyance was made to determine the homestead right, we find that the debtor at that time had made no claim to the 25½-acre tract as a part of his homestead, either by actual impressment or by any other legal mode of selection. When this suit was commenced to set aside the fraudulent conveyance of these and other lands, the debtor did not reside, and had not for years resided, upon the 133½-acre tract, and had

never resided upon the 69-acre tract, out of which his wife seeks to claim 25½ acres as exempt.

I think that the decree of the chancellor should be affirmed in this as well as in all other respects.