### Stallings *v.* Galloway-Kennedy Company.

Opinion delivered April 12, 1926.

Corporations—Authority of officers to execute mortgage to themselves.—The authority of the officers of a private corporation to execute a mortgage for valuable consideration conveying the corporate property to themselves individually cannot be questioned by subsequent creditors of the corporation, where neither the stockholders nor existing creditors are complaining.

Appeal from Monroe Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*Gregory & Holtzendorff, Cooper Thweatt* and *Bogle & Sharp,* for appellant.

*S. S. Jefferies* and *Lee & Moore,* for appellee.

Smith, J. Prior to 1914 F. M. Kennedy was engaged in the sawmilling business, with his wife as an equal partner, under the firm name of F. M. Kennedy Company. O. C. Galloway owned a sawmilling business which was operated under the name of the J. B. Galloway Company. In 1914 the Kennedy Company and the Galloway Company merged and formed a corporation, which was chartered under a corporate name of Galloway-Kennedy Company, hereinafter referred to as the company. The capital stock of the corporation was $20,000, of which Galloway and his wife each owned 22½ per

cent., and Kennedy and his wife each owned 25 per cent. The remaining five per cent. of the stock was owned by a brother of Galloway. The corporation prospered, and large dividends were earned, those for the year 1919 being between twenty and twenty-five thousand dollars. In 1918 the capital stock was increased to $75,000, which was owned in the same proportions as the original capital stock. In 1920 came the financial slump, which greatly disturbed the lumber market. The company had at that time thirty thousand dollars worth of timber on the river bank, all of which was paid for, much of which floated away, was stolen or rotted. In addition, a fire destroyed much property belonging to the company. This property was only partially insured, and all the insurance was not collected.

The company borrowed from the Merchants' & Planters' Bank of Clarendon, Arkansas, the sum of $20,000, and to secure the same executed a mortgage covering all the corporate assets. This mortgage was duly recorded. Later, and on the 10th day of February, 1920, the company borrowed from Galloway and Kennedy individually the sum of $18,000, and to secure the same executed a second mortgage on its corporate assets to Galloway and Kennedy, who had each loaned $9,000 to the company. This loan was evidenced by a note due one year after date and payable to O. C. Galloway and F. M. Kennedy. On November 14, 1921, Kennedy made the following indorsement on the back of the note: "As security for $11,233.33, I hereby transfer to Carrie C. Kennedy my one-half interest in this note." And a little later Galloway made an indorsement on the note reading, "For value received, I hereby transfer this note to Emma Galloway." Emma Galloway was the wife of O. C. Galloway and a sister of F. M. Kennedy, and Carrie Kennedy was the wife of F. M. Kennedy. On the dates the note was so indorsed Kennedy and Galloway indorsed on the margin of the record where the mortgage was recorded a transfer of their respective interests in the mortgage to their wives.

The company became involved, and was sued by a number of its creditors. The first of these suits was commenced November 4, 1921, by C. R. Stallings, who made both Galloway and Kennedy parties because of their failure, as officers of the company, to comply with § 1715, C. & M. Digest, requiring officers of a corporation to file a verified annual report of the affairs of the corporation. The contract out of which this suit by Stallings arose was dated May 4, 1920, and the corporation made no defense. Galloway and Kennedy answered, and alleged that they had complied with the statute by filing the report. Stallings recovered judgment on December 7, 1921, against both the corporation and Galloway and Kennedy, and an appeal was prosecuted from that judgment to this court. It appeared that the report had been prepared and filed, but it had not been verified, and we held on the appeal that the filing of an unverified report did not comply with the law, and the judgment against Galloway and Kennedy was affirmed because of their noncompliance with the statute. *Galloway* v. *Stallings,* 154 Ark. 16. Later other creditors of the corporation, whose suits were commenced after the institution of the Stallings suit, recovered judgments against both the company and Galloway and Kennedy. The sole ground of liability asserted against either Galloway or Kennedy in any of these suits arose out of their failure to file the report required by § 1715, C. & M. Digest.

Stallings' judgment amounted to $5,230, and upon this judgment he caused an execution to be issued, which was levied upon the corporate property and upon certain lands and town lots owned by Galloway individually in the city of Clarendon, and on certain other lands belonging to Kennedy individually. There was a sale under this execution, and Stallings became the purchaser of most of the lands sold, and among other lands purchased by him was the mill site, for which he paid $500. The lands and lots sold at this execution sale lacked $734.66 of bringing enough to satisfy Stallings' judgment, with the interest and costs. Mrs. Galloway took an assign-

ment from Stallings of his interest in the unsatisfied judgment.

After this execution sale the Merchants' & Planters'. Bank filed suit to foreclose its mortgage, and all the judgment creditors were made parties defendant, as were also Galloway and Kennedy individually and the Galloway-Kennedy Company, and Mrs. Galloway and Mrs. Kennedy as the apparent owners of the second mortgage executed by the Galloway-Kennedy Company to Galloway and Kennedy. This foreclosure suit was commenced August 16, 1922, and a decree of sale was rendered. This mortgage was originally for the sum of $20,000, but had been reduced by payments thereon to $6,417.13, and for this amount judgment was rendered. A commissioner was appointed to sell the mortgaged property, and at the sale made by the commissioner the property ordered sold was sold to Mrs. Kennedy for the sum of $9,800. The commissioner duly reported this sale, and when his report came on for confirmation the judgment creditors filed exceptions thereto and objected to its approval. It was alleged in these exceptions that bidding had been stifled, but no testimony was offered to support that charge.

By appropriate pleadings these creditors question the validity of the mortgage from the company to Galloway and Kennedy, and also the assignment of their respective interests to their wives, it being charged that there was no authority or consideration for the execution of this mortgage, and that the transfer by Galloway and Kennedy of their interests therein, if the mortgage was valid, was without consideration, and was done for the fraudulent purpose of cheating and defrauding the judgment creditors of Galloway and Kennedy. These judgment creditors prayed that the mortgage from the company to Galloway and Kennedy be canceled, and that the assignment thereof to Mrs. Galloway and Mrs. Kennedy be declared void, and they asked the court to adjudge the priority of the judgment liens of the respective creditors. It is conceded, however, that it will not

be necessary to adjudicate the question of priority if the mortgage from the company to Galloway and Kennedy, and the assignment thereof, be upheld, for the reason that the excess of the fund derived from the commissioner's sale over the debt due the bank (and the company has no other assets) will not be sufficient to discharge the second mortgage.

All the parties who are attempting to enforce judgments against the company or Galloway and Kennedy individually were made parties to the foreclosure suit of the bank, and the final decree in that cause adjudicated the rights of the parties as follows: The court found that the mortgage from the company to Galloway and Kennedy was valid and constituted a lien prior and superior to any of the judgments, and that the transfer by Galloway and Kennedy of their interests in the mortgage and the note which it secured was not a voluntary transfer but was made for a valuable consideration. The report of the sale of the corporate property to Mrs. Kennedy was approved, and the court decreed that the commissioner pay over to Mrs. Galloway and Mrs. Kennedy the excess in his hands, after paying the bank, derived from the sale, which Mrs. Kennedy had paid to the commissioners, one-half to each, and the judgment creditors have appealed. Other facts will be stated in the opinion.

The judgment of Stallings is prior in time to all the other judgments, and under this judgment the corporate property was sold, subject to the mortgage of the bank, and subject also to the mortgage from the company to Galloway and Kennedy, if that mortgage is valid, as it was of record before the contract was entered into out of which the Stallings suit against the company arose.

The first question which naturally arises is whether the company mortgage to Galloway and Kennedy is valid. We think it is. The authority of the officers of the company to execute it is questioned; but, in answer to this objection, it may be said that no stockholder of the company has ever questioned the authority of the corporate officers to execute this mortgage, and none of the

judgment creditors were creditors of the corporation when the mortgage was executed and placed of record. The court below specifically found the fact to be that the mortgage was based upon a valuable consideration, and of the correctness of this finding we entertain but little doubt. Certainly the finding is not clearly against the preponderance of the evidence.

It was shown by the testimony of the cashier of the Merchants' & Planters' Bank that separate accounts were kept in the bank with the corporation, and with Galloway and Kennedy, each of whom had an individual account. The cashier of the bank testified that the books of the bank show that on February 7, 1920, a charge of $9,000 was made against the personal account of Kennedy, and on the same date a charge of $9,000 was made against the personal account of Galloway, and the account of the company showed a deposit of $18,000, said deposit consisting of two items of $9,000 each, and on the same date the bank issued to the company a draft, payable to the White River Lumber Company, for $17,594.72. Galloway and Kennedy each explained how they obtained the money deposited to their individual accounts, and that the Galloway-Kennedy Company had a pending lawsuit with the White River Lumber Company, which was settled by paying that company the $17,594.72 evidenced by the draft above mentioned, and that they loaned the corporation the money for that purpose.

The next question which arises is whether the assignment of this mortgage to the wives of the mortgagees was fraudulent. The court below found that it was not, and we do not think that finding is against the preponderance of the evidence.

As an evidence of the fraudulent intent of Galloway and Kennedy, it is argued that their wives paid nothing for the stock of the corporation owned by them. As has been said, the corporation was organized in 1914, and, if it be conceded that Mrs. Galloway and Mrs. Kennedy paid nothing for their stock—a fact which they deny—we see no fraud in this. There were then no creditors.

Both Galloway and Kennedy were personally solvent, and so also was the corporation itself. Indeed, it was very prosperous until the financial disaster of 1920 brought ruin to so many people. The books of the corporation showed the ownership of this stock by Mrs. Galloway and Mrs. Kennedy, and there is no contention that there was ever any attempt to conceal this fact. There was no reason why Galloway and Kennedy might not have given the stock to their wives, if the transaction was in fact a gift.

Mrs. Galloway and Mrs. Kennedy each had separate bank accounts; and each owned separate property. Both Galloway and Kennedy show the money received by them from their wives within three years of the date of the assignment of the mortgage to them. We do not set out the testimony on this subject, as it would serve no useful purpose, but both Galloway and Kennedy became indebted to their wives by the appropriation and use of the dividends paid on the corporate stock owned by their wives. Cash money was borrowed, as is evidenced by checks drawn on individual accounts carried by these ladies. Property was sold which they individually owned, and each of these ladies owned Government bonds, which their husbands sold and used the proceeds of these sales. In these various ways both Galloway and Kennedy had become indebted to their wives in amounts largely exceeding any sum these ladies may receive from the commissioner under the order of the court.

In this connection it may be stated that there is no question in this case about the wives of Galloway and Kennedy permitting their husbands to so use their property as that it was a basis of credit. Indeed, the undisputed fact is that Galloway and Kennedy themselves became liable, not because of any personal obligation on their part, but only because they had made an abortive effort to comply with the law in filing the annual report of the corporation of which they were the executive officers. Credit had been extended solely to the corporation. The obligations which were reduced to judgments were

those of the corporation for which Galloway and Kennedy became liable only through the omission to verify the report which they filed in an attempt to comply with the law. *Galloway* v. *Stallings, supra.*

We are cited to the numerous cases in which this court has held that transactions between husband and wife affecting the rights of creditors, especially when the husband is insolvent at the time of the occurrence, are to be scrutinized with care in passing upon the good faith of the transaction. The case of *Davis* v. *Cramer,* 133 Ark. 224, is especially pressed upon our attention. In that case it was said: "A man must be just to creditors before he can be generous to relatives. Therefore where an insolvent debtor makes a voluntary transfer of his property, which is not exempt under the law from his debts, to those who are near of kin, whether he intends it as a fraud or not, it operates as a fraud on his creditors, for the reason that such a transfer hinders, delays or defeats them in the collection of their claims. *Wilkes* v. *Vaughan,* 73 Ark. 174; *Simon* v. *Reynolds-Davis Gro. Co.,* 108 Ark. 164."

Numerous other cases to the same effect are cited, but we do not decide anything which impairs the authority of those cases. We do hold, however, that they are not applicable to the facts of this case. It may be conceded that Galloway and Kennedy became insolvent by reason of the judgments rendered against them as officers of the Galloway-Kennedy Company by reason of their failure to file a report complying with the law. But the assignment of the mortgage was not voluntary. On the contrary, the court below found—and we think that finding is not contrary to the preponderance of the evidence—that the assignment was based upon a valuable and sufficient consideration.

It is true this assignment to the wives of the assignors proved to be a preference of them as creditors against the other creditors of the corporation who later became judgment creditors of Galloway and Kennedy. But that fact does not defeat the assignment. The assignment

was not challenged within the time and manner which would have defeated it as a preference of the wives over the other creditors.

In the case of *Waters* v. *Merit Pants Co.*, 76 Ark. 252, this court said: "It is settled by the decisions of this court that an insolvent husband, when justly indebted to his wife, may, without fraud, prefer her claim to that of other creditors, and make valid appropriation of his property to pay it, even though the result be to deprive other creditors of the means to satisfy their claims. But such transactions between husband and wife are viewed by the courts with suspicion, and the perfect good faith of the transaction must be established by proof. Where the wife asserts, as a consideration for conveyance of his property to her, a claim of debt against her insolvent husband for money loaned to him many years previous, no note or other written evidence of an agreement to repay being shown to have been executed, and the alleged debt having become stale by long lapse of time, as in this case, her bare statement should be corroborated by some other evidence of the existence of a valid debt, before the courts can accept it in support of the conveyance. For a discussion of the law on this subject reference is made to the recent case of *Davis* v. *Yonge,* 74 Ark. 161, and nothing need be added here on the subject."

The demands here are not stale. None of the items comprising them were three years old, and some were only a few weeks old, and there are evidences of the genuineness of these items which cannot be disregarded, but which are in fact undisputed.

The various judgment creditors discuss the question of the priority of their liens. The court below held that Stallings had ceased to be a judgment creditor, by reason of the execution sale and his assignment of the balance due on his judgment to Mrs. Galloway, and upon this finding the other creditors, whose judgments were rendered at subsequent terms of the court, insist that they have prior and superior claims to the surplus in the commissioner's hands.

We do not consider it necessary to decide the question of priority among these creditors, for the reason that the lien of the mortgage from the company to Galloway and Kennedy is prior and superior to these judgments, and the fund here in litigation is insufficient to discharge that lien, which we hold was acquired by Mrs. Galloway and Mrs. Kennedy for a valuable and sufficient consideration.

The decree of the court below is correct, and it is therefore affirmed.

SMITH, J., (on rehearing). It is insisted in the brief filed in support of the petition for rehearing that Galloway and Kennedy did not assign their respective interests in the notes secured by the mortgage given by the Galloway-Kennedy Company to them until after judgments had been rendered against them, and that therefore the assignees took subject to the right of the judgment creditors to subject the mortgaged property to the payment of their judgments.

In answer to this contention, it may be said that Kennedy assigned his interest in the mortgage to his wife on the 14th day of November, 1921, which was prior to the rendition of the judgment in favor of the appellant Stallings, which was the first of the judgments to be recovered; and Galloway assigned his interest in the mortgage to his wife on June 3, 1923, which was prior to the rendition of the judgment in favor of the appellant Thweatt, but subsequent to the rendition of the judgment in favor of the appellant Stallings.

Only two of the judgment creditors have appealed from the decree of the court below, which is set out in the original opinion, these being Stallings and Thweatt, and it appears from that opinion that Mrs. Galloway took an assignment from Stallings of his interest in the unsatisfied judgment in his favor. He therefore is in no position to complain, for Mrs. Galloway now owns such interest in that judgment as has not been satisfied; and, as to appellant Thweatt, it may be said that he did not recover his judgment until after both Galloway and Kennedy had

assigned their respective interests to their wives; and, as also appears from the original opinion, no creditor complained of this preference within the time when complaint might effectively have been made.