CENTRAL BANK *v.* JACOBSON.

Opinion delivered November 11, 1929.

330

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Frank Bird,* for appellee.

SMITH, J. On June 21, 1921, Charles Jacobson indorsed the note of C. E. Becker, payable to the order of the Central Bank, Little Rock, in the sum of $5,421.80, due and payable ninety days after date. The note was not paid, although frequent demand was made, and on September 29, 1922, the president of the bank wrote Jacobson that an auditing committee of the directors had ordered the note to be collected, and that it would be placed in the hands of an attorney for collection.

On November 8, 1922, Jacobson conveyed the undivided interest which he had inherited from his father in certain lands to his sister, Laura. This deed recited that it was executed in consideration of the sum of $1,000 cash in hand paid by Miss Jacobson, and in satisfaction of an existing indebtedness of $9,500 due her by the grantor.

Suit was not brought immediately, as the letter of September 29 advised would be done, but such delay as occurred appears to have been occasioned by an effort to make the debt out of Becker; and, while it does not appear just when the suit was commenced, judgment on the note was rendered January 25, 1924. After recovering this judgment, further correspondence was had and negotiations conducted in an effort to make as much of the debt out of Becker's collaterals as possible, but, when only a portion of the judgment had been collected, this

suit was begun July 16, 1927, to cancel the deed from Jacobson to his sister as a fraud upon the rights of his creditors. Separate answers were filed by both the Jacobsons, which alleged the *bona fides* of the conveyance.

The apparent consideration for the deed was $10,500, of which $9,500 was preexisting debts. The chancellor found, after hearing the case on oral testimony, that the deed was in fact a mortgage, and it was so construed, and reformed accordingly. The court also found that the actual indebtedness due Miss Jacobson from her brother amounted to only $4,500, and that the reformed instrument secured only that amount. In arriving at these figures the court disallowed the $1,000 recited as having been paid upon the delivery of the deed, and the $5,000 item which will be further discussed. From this decree the bank has appealed, and the Jacobsons have prosecuted a cross-appeal.

The deed from Jacobson to his sister conveyed all the unencumbered property owned by him at the time of its execution, and his equity in the encumbered property appears to have been of but little value, and it is certain that this deed rendered Jacobson insolvent, and, if it is allowed to stand, the bank will be unable to collect its judgment.

The law of this case is clearly stated in the case of *Wilks* v. *Vaughan*, 73 Ark. 174, 83 S. W. 913, where it was said: "It is thoroughly settled in equity jurisprudence that conveyances made to members of the household and near relatives of an embarrassed debtor are looked upon with suspicion and scrutinized with care; and when they are voluntary, they are *prima facie* fraudulent; and when the embarrassment of the debtor proceeds to financial wreck, they are presumed conclusively to be fraudulent as to existing creditors." This exact language has been quoted with approval in a number of subsequent cases.

There remains therefore only a question of fact for our consideration, and that is, was the conveyance voluntary? And, if not entirely so, what valid indebtedness subsisted between the parties?

Jacobson admitted that the deed was intended as a security for debt, and no one denied that fact, and it was therefore a mortgage, notwithstanding it was in form a deed, and the chancellor properly construed it so to be.

Jacobson undertook to state the transactions between himself and his sister which eventuated in this indebtedness, but, as has been said, the chancellor disallowed items of $1,000 and $5,000, and it is earnestly insisted on behalf of the appellant bank that Jacobson's testimony was insufficient to support the finding that there was, in fact, any indebtedness to be secured. It may be said that there was no note, or check, or other writing, evidencing any indebtedness, but Jacobson testified that his sister earned and saved money which she permitted him to use; and we are unable to say that the chancellor's finding that these transactions amounted to $4,500 is clearly against the preponderance of the evidence. We are also of the opinion that the finding that the loans did not exceed this amount is not clearly against the preponderance of the evidence. Jacobson testified that the loan of $5,000 was made to pay a mortgage on his home; but it appears that this mortgage was not paid until thirteen months after the alleged loan was made; and the evidence as to the $1,000 loan is not more certain.

Miss Jacobson did not testify, but the explanation was offered that her failure to do so was due to the fact that she was ill at her home in Texas; but no continuance was asked upon this account, nor was her deposition taken.

Upon a consideration of the case in its entirety we are unable to say that the chancellor's finding, that the indebtedness due Miss Jacobson equaled, but did not exceed, $4,500 is contrary to the preponderance of the evidence, and the decree must therefore be affirmed, both on the appeal and the cross-appeal, and it is so ordered.